# CHARLESTON.

Buster and Beard *v*. Holland *et als.*

Submitted January 14, 1886.—Decided February 6, 1886.

1. A decree ordering the sale of a defendant's land is an appealable decree under ch. 135 sec. 7, subdivision 7 of the Code, and therefore no error in such decree can be reviewed, unless the petition for the appeal was presented within five years after such decree

was rendered (reduced now to two years by Acts of 1882, ch. 157, sec. 3, p. 506). .Even though such decree was not a final decree, and a final decree was subsequently rendered, and an appeal was properly obtained from it, if the error in this final decree arose solely from errors in such decree of sale followed in the final decree. (p. 523.)

2. A failure for fourteen years to make any entry of a cause at all or to make any entry but a continuance is no discontinuance of the cause, if the court has made no order dismissing the cause for want of prosecution, as provided by sec. 8, of ch. 127 or the Code. (p. 527.)

3. But when a decree for the sale of land has remained unexecuted for fourteen years, and a petition or bill is filed by the debtor asking the enjoining of such sale of his land, because the debt, for which the land had been decreed to be sold, had since the decree been paid in full, and the truth of the facts stated in such bill are sworn to by the debtor, the court should enjoin such sale until the further order of the court and should refer the cause to a commissioner to ascertain what, if anything, is still due on such debt. (p. 527.)

4. Where one is indebted to another in several debts, and the debtor makes payments without directing to which of the debts the payments shall be applied, and the creditor makes no particular application of the payments when received, there is no settled rule that the payments shall be either according to the presumed intention of the debtor, or that they shall be applied in the manner most beneficial to the one or the other; but it devolves on the court to apply them according to the justice of the particular case with a view to all its circumstances. (p. 531.)

5. A court in granting or refusing a continuance of a cause ought to exercise a sound discretion, and if a party be ruled into a trial or hearing of a cause, when it appears he was entitled to a continuance, the judgment or a decree against him will be reversed by an appellate court; but the appellate court will not reverse the judgment or decree of the inferior court for such reason, unless its action was plainly erroneous. (p. 534.)

6. As to any matter not theretofore adjudicated, if a deposition be taken and returned before the final hearing of a cause, it may be read; but the right to have it read is not an absolute right. (p. 536.)

7. If a cause has been referred to a commissioner, and ample opportunity has been afforded to both parties to introduce their witnesses, and the commissioner has made his report, and the cause is ready for hearing, a deposition afterwards taken as to a con-

| | |
|---|---|
| 27 | 510 |
| 51 | 479 |
| 52 | 170 |
| 27 | 510 |
| 54 | 584 |
| 27 | 510 |
| 56 | 189 |
| 56 | 600 |
| 57 | 475 |
| 57 | 476 |
| 57 | 578 |
| 27 | 510 |
| 58 | 551 |
| e58 | 581 |
| 27 | 510 |
| 59 | 680 |
| 60 | 603 |
| 27 | 510 |
| f62 | 548 |
| 62 | 673 |
| f63 | 197 |
| 63 | 258 |
| 63 | 417 |
| 63 | 570 |
| 27 | 510 |
| 64 | 223 |
| j65 | 765 |

troverted matter in the report ought generally to be disregarded by the court.   (p. 537.)

*Arbuckle & McPherson* and *J. A. Preston* for appellant.

*A. F. Matthews* for appellees.

Statement by GREEN, JUDGE:

While the testimony in this cause is contradictory, and where not contradictory is often indefinite as to material facts, and while the pleadings too are often so vague as to be almost unintelligible, it seems to me we can collect from the entire record the substantial facts, out of which the controversy in this cause has arisen.   Some of the facts occurred prior to the institution of the suit, and others after the suit was commenced; and it is in this, as in most other cases, absolutely essential in deciding it, that we should distinguish the former from the latter.   This constitutes one of the principal difficulties in the decision of this cause.   It is difficult to determine, when the various events, on which this cause depends, happened, owing to the vagueness with which these events are stated in the pleadings and in the testimony. Indeed the very first decree entered in the cause would without hesitation on our part be set aside, if for no other reason, because of the vague and indefinite statement of the facts, on which the plaintiffs ask relief as stated in their bill, but for the fact, that, as we will hereafter see, this Court has no power now to review this decree on this appeal.

The material facts, out of which this controversy has arisen, seem to be as follows : On November 11, 1865, the plaintiffs, Buster and Beard, sold to Robert Robinson, the appellant, and C. B. Dyer and E. W. Hall, a certain tanyard property in Greenbrier county, West Virginia, and the stock of leather, hides, &c., on hand for $4,150.00, with interest from date, to be paid in three equal installments in six, twelve and twenty-four months ; and three bonds of that date were in accordance with the terms of the sale executed by the vendees to the vendors.   The vendees were at once put in possession of the property and paid $30.00 or $40.00 on these bonds representing this purchase-money in skins and leather.   Dyer and Hall both became insolvent, and neither of them ever

paid anything on their purchase-money bonds individually. But Robinson paid in property and money considerable sums on the first of these bonds.    There is considerable conflict in the testimony as to how much was thus paid; but the evidence, I think, satisfactorily shows that the entire amount so paid prior to March 1, 1867, including the $30.00 or $40.00 paid in skins and leather, amounted to something over $500.00, and that the balance due on this bond on that day including interest was $927.38.    The second purchase-money bond was then.due, and with the interest on it amounted to $1,491.87.    The entire amount of the purchase-money then due was $2,419.25.    To pay this large amount Robert Robinson then sold to John M. Holland a tract of land containing 150 acres more or less lying in said county and assigned two bonds, which were executed to him for the purchase of the land, to Buster and Beard, they agreeing to receive them and apply their amount as a credit on this $2,419.25 due them, which had been due for some time, excluding of course the third and last purchase-money bond, which was for $1,383.33⅓ with interest from November 11, 1865, due on November 11, 1867, more than seven months afterwards.    These two bonds of Holland to Robinson were dated March 1, 1867, and bore interest from that date and were each for $1,000.00 and were payable probably in six and twelve months after date.    The two sums of $1,000.00 each were on March 1, 1867, applied as a credit on the $2,419.25 then due, paying off the balance due on the first bond, which was surrendered to Robinson, and paying $1,072.62 on the second of these bonds, which was then credited by that amount, leaving a balance due on that bond as of March 1, 1867, of $419.25 besides the third bond of $1,383.33⅓ with interest from March 1, 1867, which would fall due on November 11, 1867.

Suits were brought by the assignees, Buster and Beard, in the name of the obligor, Robert Robinson, on the two bonds of John M. Holland for $1,000.00 each with interest from March 1, 1867, very shortly after they fell due, and judgments were obtained by default on them for the full amount at the April and September terms, 1868, of the circuit court of Greenbrier county, and executions issued by the plaintiffs

on these two judgments, which executions in December, 1868, were returned "No property found." Shortly thereafter, Buster and Beard brought this chancery suit to enforce the lien of these judgments on this tract of 150 acres, which Holland had bought of Robinson. The bill was filed at September rules, 1869. It is a very defective bill. It states only that Robert Robinson had assigned to the plaintiffs, Buster and Beard, these two bonds of $1,000.00 executed to him by John M. Holland for payment of the purchase-money of this tract of 150 acres of land in Greenbrier county, West Virginia; but it does not state the consideration, or that there was any consideration for this assignment. It states as above, that they obtained the judgments above described on these two bonds against Holland, and that the executions issued on them were returned "No property found," and that these judgments can only be satisfied by a sale of said 150 acres of land, upon which they are liens, and on which Holland lived at that time. The bill then concludes as follows :

"Your orators further represent that the said Robert Robinson purchased the said land from Henry F. Hunter, who has since died, and that the legal title to said land is now vested in William T. Mann and John A. Hunter; that Robert F. Dennis has qualified as the administrator of the said Henry F. Hunter, deceased, and that the said H. F. Hunter, deceased, left a widow, Caroline Hunter, and the following children, all of whom are infants of tender years, viz., Francis, Carter B., Hattie, Benjamin F. and Robert F.

"In tender consideration of the premises, and being without remedy save in a court of equity, your orators pray that the said John M. Holland, Robert Robinson, Robert F. Dennis, administrator of Henry F. Hunter, deceased, Caroline Hunter, and the said infant children of H. F. Hunter, deceased, by their guardian *ad litem* (to be appointed by this honorable court or its clerk), William T. Mann and John A. Hunter may be made parties defendant to this bill and be required to answer the same fully upon their oaths; that the said lands may be sold, and that your orators' judgments may be satisfied out of the proceeds of the sale, and that your orators may have such other, further and complete relief as consists with equity and is applicable to the circumstances of

their case; may the State's spa. issue. And as in duty, &c., your orators will ever pray."

The various parties named in the bill were made defendants. A formal answer to the bill was filed by the guardian *ad litem* of the infant defendants, and it was taken for confessed as to all the other defendants, and no other action taken in it till April 11, 1871. The court then entered a decree, which after reciting these proceedings proceeds as follows:

"On consideration whereof, and it appearing to the court that the said two judgments of $1,000.00 each, with interest on one from March 1, 1867, and costs $7.08, and with interest on the other from March 1, 1867, and $6.98 costs, rendered in favor of the plaintiffs at the April and September terms, 1868, respectively, of the circuit court of Greenbrier county against the defendant, John M. Holland, are liens upon the said land mentioned and described in the bill, and that the same should be sold to satisfy the said judgments, it is therefore adjudged, ordered and decreed that H. M. and A. F. Mathews and John . W. Harris, who are hereby appointed commissioners for that purpose, shall, after having given notice by publication for four weeks in a newspaper published in Lewisburg of the time and place and terms of sale, sell the said land at public auction in front of the hotel of Cabell & Vandiver, in Lewisburg, on a credit of six, twelve and eighteen months, except as to so much as shall be necessary to pay the expenses of sale and costs of the suit, which shall be paid in cash on the day of sale. The said commissioners shall take bonds, with good personal security, for the deferred installments, and report their proceedings under this decree to this court. But before executing this decree, the said commissioners shall execute bond in the penalty of $4,000.00, to be approved by the clerk of this court, conditioned according to law."

No other action was taken in this cause for more than fourteen years, except that it was formally continued from time to time for some five years, and it was then in October, 1876, omitted by the clerk from his docket, but no order directing this and no other order of any kind was made by the court till the April term, 1885.

Shortly after the filing of the bill in this cause at September

rules, 1869, or it may have been shortly before that, but after the rendition of said two judgments in the name of Robert Robinson for the use of Buster and Beard, John M. Holland being entirely insolvent, Robert Robinson re-purchased from him this tract of 150 acres of land, which he had sold to him on March 1, 1867. It does not definitely appear, when this re-purchase was made or the terms of it, or whether it was in writing or not. When it became obvious that Robert Robinson could not pay the large balance still due on the purchase of the tanyard-property, probably about March 1, 1869, he re-sold it to Buster and Beard as a means of satisfying this indebtedness. The price to be paid for it was $2,500.00, no stock of hides or leather being sold with it.

There is great conflict in the testimony in reference to this re-purchase. No one was present, when it was·made, but the parties; and the plaintiffs below in their depositions state, that the contract of re-purchase by them was merely verbal, and the price was $2,500.00, which was to be applied first to the payment of the balance that was due them on the second purchase-money bond of this property of Robinson and then to the third and last of these purchase-money bonds due from Robinson to them, and the residue was to go as a credit on the judgments of Robinson for the use of Buster and Beard against Holland.

On the other hand Robinson in his deposition says, that this contract for the re-purchase was in writing, which writing Buster and Beard kept, and he thinks the price to be allowed him was $3,500.00, and that it was first to go to satisfy these judgments against Holland, and the balance was to go on these bonds of his for the purchase of this property, which Buster and Beard still held.

In October, 1884, these parties attempted to make a settlement of these matters, and in a statement furnished by Buster and Beard the price of this tannery-property was put at $2,500.00, and the statement was made out according to their understanding generally. Robinson expressed his surprise at the large amount represented to be due from him by this statement, but he did not then dispute, that the price to be allowed him for the tannery-property by Buster and Beard was $2,500.00, nor did he dispute any other of the items of this statement; but he would not settle by it.

My conclusion from the evidence is, that the price to be paid for the re-purchase of the tannery-property was $2,500.00; and that it is most probable, that nothing was said about the mode of application of this $2,500.00; for no credit was then given either on the bonds held by Buster and Beard against Robinson for the purchase of the tannery-property nor on the judgments against Holland. On the contrary on April 11, 1871, Buster and Beard, as we have seen, took a decree to sell this 150 acre tract of land to pay the full amount of these judgments, as though nothing had been paid upon them. These parties having failed to make a settlement, in October, 1884, the surviving commissioners under this decree of April 11, 1871, advertised for sale this tract of land then owned by Robert Robinson to satisfy these judgments against Holland, which were liens upon it, as it was owned by Holland when the judgments were rendered. Thereupon Robinson and Holland at the April term, 1885, of the circuit court of Greenbrier county filed what they styled a petition in this cause, but which was really a bill, praying an injunction to prohibit this sale. In this bill or petition Robinson and Holland set out the facts, which I have stated above, up to and including the rendition of the decrees of April 11, 1871, but omit to say anything about the re-sale of the property to Buster and Beard, which really took place probably about March 1, 1869, more than two years before the decree of April 11, 1871. On the contrary what is said about this re-sale would leave the impression, that it was after said decree. They conclude their petition as follows:

" Your petitioners further represent that said petitioner, Robert Robinson, re-sold the tanyard-property to said Buster and Beard, and in addition thereto *and* agreed to pay them a large sum of money, which was to be, and was in full satisfaction of the decree as aforesaid against these petitioners, and therefore they allege that said debt to said Buster and Beard was fully paid; that said Robinson has not been credited with the money so paid by him on said decree; that said Holland, being unable to pay any part of said debt to Robinson, re-sold to him, Robinson, the said tract of land for which said two $1,000.00 bonds were given.

" Petitioners further allege that after said Robinson re-sold

to said Buster and Beard the tanyard-property and satisfied their debt, they dismissed their said chancery suit from the docket of the court at the October term, 1876, as will appear from the certificate of J. Mays, clerk, marked Exhibit 'A.'

" Your petitioners further allege that the said decree entered at the April term, 1871, of said circuit court in favor of said Buster and Beard against these petitioners is barred by time, and therefore dead and can not now be of any force —in any manner revived, and they rely on and hereby plead the statute of limitations in bar of said debt; that execution never issued on said decree, as will appear from the certificate of J. Mays, clerk, filed as a part of this petition and marked Exhibit 'A,' and more than ten years having elapsed, said decree can not be revived or of any force.

" Your petitioners further allege that Alexander F. Mathews and John W. Harris, two of the commissioners appointed to make sale of said land under said decree of April term, 1871, have advertised the same for sale, as will appear from a copy of said advertisement herewith filed and marked 'C,' said sale to be made on April 23, 1885.

" Your petitioners therefore pray that a rule may issue against said Charles B. Buster, Samuel C. Beard and Alexander F. Mathews and John W. Harris, commissioners as aforesaid, returnable forthwith, requiring them to show cause why they shall not be inhibited and restrained from making sale of said land or attempting to enforce said decree; that they may have such other, further and complete relief as the court deems proper. And they will ever pray," &c.

This petition or bill was sworn to, and as soon as it was filed, Buster and Beard filed a joint answer also sworn to, which set out the facts vaguely but substantially as I have stated them. In this answer they say : "That in a comparatively short time after it (the decree) was rendered, a claim paramount to that of the said Ro. Robinson, who had sold it to John M. Holland, was asserted by one W. T. Mann to a part of the land thereby directed to be sold; that out of this claim a hotly contested and very protracted litigation arose, and they awaited the result that they might know how far and upon what their said decree was operative; that said litigation was but recently closed by a sale under decree of court

of a part of said land for the benefit of the estate of said · Mann, and very soon after this result was reached these respondents directed the surviving commissioner named in their said decree to advertise for sale the residue of said land, as has been done."

These facts explaining the delay in the prosecution of this suit are proven in a manner still more vague.    In this answer Buster and Beard admit that after paying the balance due on the bonds of Robinson held by them there would be in their hands of the $2,500.00, which they were to pay Robinson on there-purchase of this tannery-property, $373.44, which should have been credited on their bonds, for the full amount of which they got judgment against Holland as of March 1, 1869, but that nothing was credited on said bonds, and by the decree entered on April 11, 1871, the land was to be sold to pay the whole amount of these judgments undiminished by this credit of $373.44 as of March 1, 1869.    But they admit, that this decree should be offset by this amount, just as if it had been allowed on a payment, also a credit of $150.00 given as a credit to Robinson for a horse sold to Buster probably in 1869, the price of which was to go as a credit on this indebtedness of Robinson to Buster and Beard and $55.00 paid them since 1880.    These items I have stated hereinbefore and the costs of the various suits constituted the items of the commissioner's report.    Calculating in this manner he found due from Robinson to Buster and Beard on June 20, 1885, $3,411.14.    He then concludes his report as follows:

" Thus your commissioner would report that according to his view of this case, there is due on the Holland debt as decreed at the April term, 1871, the sum of $3,411.14, (three thousand, four hundred and eleven and fourteen one-hundredth dollars.)    This your commissioner regards as a lien on the land sold by Robinson to Holland and subsequently re-sold by Holland to Robinson.

" It is claimed by Robinson that he has a right to indicate now on which of the debts the $2,500.00 should be credited— that is, whether upon the balance due on the original bonds executed by Robinson to Buster and Beard, or upon the judgments against Holland, because Buster and Beard never entered the credit on either of said claims, and continued to

hold his bonds (or the two last of them) until they were filed by them in this cause. This statement is made at the request of R. Robinson's counsel, and the question raised by it is one for the court, as your commissioner thinks."

The following exceptions were filed to this report:

"First.—Because said commissioner does not give credit for the tanyard-property at $3,500.00.

"Second.—The amount of the price of the tanyard-property should have been first credited on the Holland judgments.

"Third.—The debt of the plaintiff is barred by time."

After this report was returned at the next term of the court, Robinson asked a continuance of the cause, and to support his motion made an affidavit setting out his recent discovery of evidence of two witnesses, one living in Summers county and the other in Calhoun county ; that the exact evidence of the last witness he has not been able to find out but can do so, and that the depositions of these witnesses are material, and he can not safely try the cause without them, and that he has used due diligence to get their depositions. But though he says that within a few days he has talked to one of these witnesses, he does not give the name of either, or what they will prove, or what effort he has made to get their evidence. All that he says is vague and indefinite. After the cause was submitted and during the term of the court Robinson took on his own behalf the deposition of John M. Holland, his co-petitioner. . He was not cross-examined as the counsel for Buster and Beard were engaged in the court professionally. This deposition was excepted to for want of sufficient notice and because of the time when taken. The notice is not copied in the record.

He testified that he paid through one John G. Lobban $130.00 to C. B. Buster on his bond, which Buster and Beard held, and also to Beard a certain sum the two together, he thought, amounting to about $400.00, which were never credited as they should have been on his bonds for the purchase of this 150 acres of Robinson. He also proved, that it was his understanding, that on taking back the tannery-property Buster and Beard were to surrender to Robinson his bonds given for the purchase-money and also his two bonds of $1,000.00 each given to Robinson for the 150 acres of land

and assigned by Robinson to Buster and Beard.   This was denied by an affidavit of Buster and Beard, and they also state in an affidavit, that they believe the witness living in Summers county referred to by Robinson in his affidavit is John M. Holland his co-petitioner, and that Robinson could at any time have ascertained his exact residence and taken his deposition, if he had so desired.

Buster in an affidavit denies the credits on these bonds of Holland held by Buster and Beard claimed by him in his deposition but admits two credits, one of $95.00 and the other of $53.00, which were the only payments on them ever made by Holland ; and these credits were not put on them at Holland's request, he agreeing if Buster and Beard on the sale of the 150 acres of land made the entire debt due from Holland, they would pay him these sums and interest, as Holland said, this was the only way he could keep Robinson from getting the advantage of him.   As Robinson ought by his contract, when he purchased back this 150 acres, to have let him, Holland, have the benefit of these payments, but which he refused to do; but Beard expressed his willingness to abandon this contract and credit these sums and their interest on the amount found due Buster and Beard by the commissioner's report.

The court on June 30, 1885, entered the following decree :

" This cause came on this day, June 30, 1885, to be again heard upon the papers formerly read, the report of commissioner James Withrow, made pursuant to the decree rendered at the April term, 1885, the exception thereto endorsed by the defendant, Robinson, the affidavit of the defendant, Robert Robinson, the deposition of John M. Holland, taken during the present term and since this cause was submitted for decision, with the exceptions thereto, the motion of said defendant to continue this cause until the next term, the joint affidavit of S. C. Beard and C. B. Buster, and also their several affidavits in opposition to said motion, with the exceptions endorsed thereon, and argued by counse    And it appearing from said report that the said commissioner, in pursuance of said decree, has stated and reported an account of all matters in difference between the plaintiffs and the defendant, Robert Robinson ; that the re-sale of the tanyard-

66

property to the said plaintiffs was made in satisfaction of the debt now claimed by the plaintiffs under the decree at the April term, 1871, and that the amount still due upon the liens mentioned in said decree of the April term, 1871, after deducting all credits, payments or offsets admitted or established by competent proof, is $3,411.14, as of June 20, 1885, of which $1,730.54 is principal and the balance interest, upon consideration thereof, it is adjudged, ordered and decreed that said exception to said deposition of John M. Holland be sustained, but said paper be allowed to be read as an *ex parte* affidavit; that said exceptions to the affidavits of S. C. Beard and C. B. Buster be overruled, and that said exceptions to the report of commissioner Withrow and said motion for a continuance be also overruled, and said report as aforesaid be and it is hereby confirmed; that the said decree of the April term, 1871, be modified in accordance therewith so as to make the amount recovered by said plaintiffs and for which a sale of the land in said decree mentioned is directed the said sum of $3,411.14, with interest on $1,730.54, part thereof, from June 20, 1885, and their costs, and that said sale be made in front of the hotel of James H. Stratten, instead of the hotel of Cabell & Vandiver in said decree mentioned, and that said decree of the April term, 1871, be in all other respects confirmed and left in full force. And it is further adjudged, ordered and decreed that the restraining order made in this cause at the April term, 1885, upon the petition of defendant, R. Robinson, be and it is hereby dissolved; that said petition be dismissed, and that the defendants to said petition, who are the plaintiffs in this suit, recover from the said petitioner, Robert Robinson, their costs in said proceeding. And it is further adjudged, ordered and decreed that upon the confirmation of the report of sale to be made in pursuance of the decree of the April term, 1871, as modified by this decree, the said commissioner shall withdraw the said sale-bonds, collect the same as they become due, and out of the proceeds pay to the plaintiffs the amounts hereinbefore decreed to them, with interest accrued thereon, and pay over the balance to the defendant, Robert Robinson. And when the said purchase-money shall have been fully paid, then Alexander F. Mathews, who is hereby appointed a special commissioner for

the purpose, shall make to the purchaser a deed in fee simple, with special warranty of title for said land, for which the grantee in said deed shall pay him a fee of $5.00."

From the decrees of April 11, 1871, April 25, 1885, and June 30, 1885, Robert Robinson obtained an appeal and *supersedeas.*

Opinion by GREEN, JUDGE :

The first question presented by this record is, can this Court on this appeal review the decree rendered by the circuit court of Greenbrier on November 11, 1871 ? In *Lloyd et al.* v. *Kline et al.,* 26 W. Va. 534 this Court decided :

"Under the provisions of our statute § 3 ch. 44 of Acts of 1877 and sec. 3 ch. 157 of Acts of 1882, no petition can be entertained by this Court for an appeal from any decree of any character, which was rendered more that five years before the petition is presented for an appeal; and when an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding non-appealable decrees or orders, from which has arisen any of the errors complained of in the decree appealed from, no matter how long they may have been rendered before the appeal was taken. But a party can not be granted an appeal upon a petition assigning errors in appealable decrees rendered more than five years before his petition is presented, although the errors thus assigned may be the foundation of and be given effect in a subsequent decree rendered within five years, from which an appeal is also prayed. The petition must show, that the party is entitled to an appeal for such subsequent decree alone, or the appeal can not be properly allowed; and if inadvertently allowed it will be dismissed."

The decree of April 11, 1871, ordering the sale of the land of one of the appellants is an appealable decree; for ch. 155, sec. 1 subdivision 7 of Code, (Warth's Code p. 745) provides, that an appeal may be taken from a decree of a circuit court when the decree requires the possession or title of property to be changed or adjudicates the principles of a cause. This decree adjudicates the principles of the cause and according to the views of some of the Virginia decisions is a final decree;

but be this as it may, it certainly requires the possession and title of real property to be changed. Appeals from just such decrees are constantly entertained by this Court, and this very case is one instance of our entertaining such an appeal; for the decree of January 30, 1885, is just such a decree. If then there is no error in this last decree except, such as were based upon errors in the decree of April 11, 1871, we can not according to the decision in *Lloyd et al.* v. *Kline et al.*, 26 W. Va. 534, review the decree of April 11, 1871, from which an appeal could have been taken in five years, but from which an appeal was not taken till fourteen years after its rendition. As we shall show hereafter, there are no errors in the decree of June 30, 1885, except those based on errors in this decree of April 11, 1871. These errors can not be reviewed by this Court, though they are very palpable. As for instance no time was given the debtor to pay the judgments, for which his land was ordered to be sold, before such sale was made. This was an error, for which this decree if appealed from in proper time, would have been reversed, as has been often decided by this Court. (*Peck* v. *Chambers*, 8 W. Va. 215; *Rhorer* v. *Travers, trustee et al.*, 11 W. Va. 157). Again there is no distinct allegation in the bill, that the land, on which by this decree the judgments named in the bill were liens, was, when said judgments were rendered, or had ever been since their rendition the property of the judgment-debtor; but perhaps this defect might be disregarded, as the bill states, that the judgment-debtor had bought this land and lived on it, when this suit was instituted. Again the bill shows, that the judgment-debtor did not have the legal title to this land, that it had been purchased of Henry F. Hunter deceased, 'and that the legal title was then in William F. Mann and John A. Hunter; but the bill entirely fails to state how the legal title of this land was in Mann and Hunter, or whether they had or had not any equitable claim to or upon this land. A suspicion, that there was some valid claim of some sort on this land superior to the judgments sought to be enforced against it, arises in our mind from the fact, that Henry F. Hunter, who had held the legal title, was made a party; but the bill assigns no reason, why he was made a party, and does not pretend to state the nature

of his claim. Again there was no inquiry made by the courts as to whether there were or were not other judgments or liens of some sort on this land. Such inquiry as well as the settlement of the priorities of the liens ought to have preceded any decree of sale.

But however obvious it may be, that this decree of April 11, 1871, ought not to have been rendered, it can not now be reviewed or reversed but must be regarded, as though it had been properly rendered.

But the appellant's counsel claim, that, though it can not be reviewed and must be regarded, now as though it was properly rendered, yet after the lapse of ten years its enforcement like the enforcement of any judgment or decree for the payment of money became barred by the statute of limitations, and therefore as the defendants in the original suit, Robinson and Holland, in their petition or more properly bill of injunction filed at the April term, 1885, relied upon the statute of limitations as a bar to the enforcement of this decree, the court instead of referring the cause to a commissioner to settle accounts between the parties and to ascertain, whether anything still remained due on the liens of the two judgments upon the land decreed to be sold, ought upon this petition or bill of injunction and the answer of Buster and Beard to have decreed, that the sale of the said land under the decree of April 11, 1871, be perpetually enjoined. The appellant's counsel refer the court to no statute of limitation, which bars the enforcement of such a decree by a sale of the land as by it directed. There is no such statute. The counsel rely upon the decision of this Court in *Werden-baugh* v. *Reid et al.*, 20 W. Va. 588, as deciding principles, which, when properly applied, would lead to the refusal of a court of equity to permit such a decree as this to be enforced in any manner, after ten years had elapsed without any attempt to enforce it in any manner and without any order of any sort being entered in the cause except simply an order of continuance. It was there decided, that the lien of a judgment, on which no execution has ever issued, will not be enforced in a court of equity in a suit brought after the lapse of ten years from the date of the judgment. (p. 588 ; point 2 of syl.)

This conclusion was reached by the following course of reasoning : As the lien of a judgment on real estate had been held to be barred in a court of equity, whenever the right to sue out an *elegit* ceased, when the *elegit* was abolished, and at the same time a new lien on all the personal estate of a debtor, which he then had, or which he might thereafter acquire, was given to a writ of *fieri facias*, which in many important respects resembled the lien on the debtor's real estate, which had existed theretofore conditioned on the right to sue out an *elegit*, the courts because of the analogy between the lien under the *elegit* and this new lien of the *fieri facias* ought to apply to the latter the same limitation, as had been applied to the former, so that such lien of a judgment on a debtor's land ought not after the abolition of the writ of *elegit* to be enforced in a court of equity in a suit brought after the right to sue out a writ of *fieri facias* by *scire facias* or otherwise had ceased to exist by the bar of the statute of limitations.

This bar is fixed by secs. 10, 11 and 12 of ch. 139 of Code. (See Warth's Code, p. 776); and where no execution is issued, it is fixed thereby at ten years; and where execution had issued, and there had been a return of "no property found," as in this case, this right to sue out a new *fieri facias*, if neither reduced nor lengthened in the manner named in secs. 11 and 12 of ch. 139 of Code, was fixed at ten years from the return-day of the writ. Under these sections the right to sue out writs of *fieri facias* on the two judgments against John M. Holland named in the bill would have been barred in ten years after the return-day of the executions, on which were endorsed respectively the return of "no property found." The ten years had elasped several years prior to April, 1885, when this petition or bill of injunction was filed by Buster and Beard, and under the decision in *Werdenbaugh* v. *Reid*, 20 W. Va. 588, it is clear, that the liens of these two judgments on the real estate of Holland could not have been enforced in a court of equity, had no suit been brought to enforce them prior to April, 1885. But a suit had been brought in September, 1869, when there was no difficulty in the enforcement of them by reason of any lapse of time. And the suit being thus brought in good time, the fact, that it lasted more than ten years, could not of course prevent a court from

giving the plaintiff the relief he was entitled to, when he brought the suit, unless the law be, that he forfeited this right by failing to have any entry made in the cause for more than ten years except simple entries of continuance. And it is obvious that this would no more forfeit or prejudice his rights in a suit brought to enforce the lien of judgments than it would in a chancery suit brought for any other purpose. So that the case of *Werdenbaugh* v. *Reid,* 20 W. Va. 588, is irrelevant and can have no weight in deciding this cause.

We have decided, that a failure to make any entry but continuances in a cause for any length of time is no discontinuance of the cause, if the court has made no order dismissing the cause for want of prosecution for four successive years, as it may do under sec. 8, ch. 127, of the Code. (Warth's Code, p. 715.) See *Gillespie* v. *Bailey,* 12 W. Va. 71, point 7 of syllabus, p. 86. In that case the failure to prosecute the cause lasted thirteen years, a regular order of continuance having been entered at each term, which by the common law had to be done to prevent a discontinuance. This has been changed by the statute-law, which provides, that all causes undetermined shall at each term without any order of continuance stand continued until the next term. (Code ch. 114, sec. 12, p. 578, Warth's Code, p. 676). So though no order of continuance was entered on the order-book in the cause for more than nine years, yet this makes no difference, and the case is precisely the same, as if such orders had been regularly made at each term.

Though on the presentation of the petition or bill of injunction of Robinson and Holland at the April term, 1885, the court was bound to regard the decree of April 11, 1871, as in all respects correct, the court having after this lapse of time no right to review it, and though the enforcement of it was not barred by the statute of limitations, yet the court did not err in its decree of April 25, 1885, in enjoining the commissioners from selling the land directed to be sold and referring it to a commissioner to ascertain, whether the judgments, for which it had been decreed to be sold, had not subsequently been satisfied, as claimed by the petition or bill of Holland and Robinson, by the re-sale of the tanyard-property to Buster and Beard or by payments, which had been

subsequently made to them, and if not fully satisfied, how much remained due upon these judgments. It seems to me that this petition or bill of Robinson and Holland, the contents of which I have briefly stated, and the answer thereto of Buster and Beard showed the propriety of the refusal of the court to permit this land to be sold by the commissioners, until these matters had been enquired into and decided by the court, for the answer showed, that it was not even claimed, that the judgments against Holland had not been reduced. It is true that the amount of these judgments had been considerably reduced prior to the decree of April 11, 1871; but the answers showed that the defendants were willing that the land should be sold for the true amount ascertained to be due on these Holland judgments. In so doing this Court was not in any way questioning or reviewing the decree of April 11, 1871, but was simply enquiring, as under the circumstances it was bound to do, whether the liens, to pay which this land had been ordered to be sold, had not otherwise been paid since the decree was rendered or were not subject to be reduced by offsets, which the answer admitted were proper.

The mere lapse of time since the decree was rendered, some fourteen years, was in itself entitled to great weight in determining the propriety of enjoining the making of the sale, till this enquiry was made. Though the time, which had elapsed, was not sufficient to raise a presumption that these liens were paid, twenty years or an approximation to that time being required to raise such presumption, yet, unexplained, this lapse of time was a circumstance, which would naturally raise a suspicion, that there existed some reason why this sale ought not to be made. The facts, that were proven, when the enquiries directed by the court were made, as well as the commissioner's report showed, that it was not true, as stated in the petition or bill of injunction of Holland and Robinson that the judgments against Holland, for the payment of which this land had been decreed to be sold, had been paid and satisfied by the re-sale of the tanyard-property, or in any other way; but they also showed, that, though these judgments had not been paid in full in this or any other manner, they had been in part satisfied by this re-sale, if allowed as a proper offset, which the answer stated that it

might and ought to be, and that the amount due on them, when such offsets and payments were credited, as of June 25, 1885, was $3,411.14, whereas had they not been thus reduced, the amount would have been $2,000.00, with interest from March 1, 1867, and $14.06 costs, or $4,424.00. So that the payments on and offset against these judgments appear to have amounted to more than $1,000.00, as of June 20, 1885. This, I believe, is as correct an account of the sum, to which these judgments were thus reduced, as can be reached from the very conflicting testimony in the cause.

Even if the deposition of the defendant, John M. Holland, taken during the term of the court and while the counsel for the plaintiffs, Buster and Beard, was engaged in court, which witness was therefore not cross-examined, had been used, it would not in my judgment have modified this result. For, though he says he understood that upon the resale of the property the bonds, on which these judgments were rendered, were to be surrendered by Buster and Beard, the holders of them, this was contradicted by both these parties in their depositions, and they say the price of the property, $2,500.00, was to be applied first to what was due from Robinson to them on his former purchase of the property, and the residue only was to be applied to the payment of these judgments against Holland, and though they may be wrong in saying that there was an express understanding, that this application was to be made in this manner, yet there was, I am satisfied, no understanding that the $2,500.00 was to be applied to extinguish the bonds, on which were rendered the judgments against Holland, and the application claimed by Buster and Beard was, as we shall see, just. And the commissioner's report shows that, if this application was made, the residue would have been only $523.52, leaving a balance then due on the judgments against Holland on these two bonds of $1,730.54. For this balance Buster and Beard then had a lien upon 150 acres of land; and a decree to sell the same to satisfy such lien was afterwards rendered. It seems highly improbable, that they would have re-purchased the property and agreed, that the purchase-money should be applied to pay off these bonds, which were afterwards rendered judgments against Holland,

and leave $1,730.54 a simple debt due from the original purchasers from them entirely unsecured except by the bonds of the purchasers, two of whom were entirely insolvent, and the other of whom after the sale of the property was probably worth very little if anything.

The $400.00, which Holland in his deposition says he paid for Buster and Beard to go as a credit on his bonds held by them, before they got judgment on them, would in no manner have altered the case, had the courts read his deposition, because after these payments are said to have been made, Buster and Beard obtained their two judgments by default against Holland on his two bonds; and their judgments would have effectually estopped him from setting up these payments.

It was claimed however in the court below and is now claimed by the counsel of Robinson, that he had a right, while the case was pending before the commissioners, to direct the $2,500.00, the price of the tanyard-property at its resale to Buster and Beard, to be credited on these Holland judgments, as Buster and Beard had never entered a credit for these claims on the bonds, which they held against Robinson, Dyer and Hull for the purchaser of the property; and one of Robinson's exceptions to the commissioner's report is, that this $2,500.00 was not credited on these Holland judgments. If it had been so credited, it would have entirely paid them off, and the liens on the 150 acre tract of land, for which by the decree of April 11, 1871, it was directed to be sold, would have been fully paid. It must however be noticed, that the payment of the $2,500.00 was made prior to the decree of April 11, 1871, and prior to his institution of this suit, and if applied, as it is claimed it should have been, to these Holland judgments, it would have paid them off, and this suit would have never been brought.

But if by reviewing the evidence more favorably to Robinson we were to consider, that there had been originally no understanding by the parties that the $2,500.00 was to be applied first to the extinguishment of the purchase-money bonds for the property, but only a general understanding that it was to be a payment on what was due to Buster and Beard, their being no express application of it either to the bonds on which afterwards the Holland judgments were rendered or to the purchase-money bonds, and if we were further

to consider, that there was no express application by the parties of this $2,500.00 in October, 1884, and that without the consent of Robinson Buster and Beard had no right in October, 1884, to apply it to the payment of the debt due on the bonds of Robinson, Dyer and Hull because of the great lapse of time, since this payment was made in 1869, and that the rendition of the decree of April 11, 1871, did not estop Robinson from setting up any claim to apply it first to the payment of these judgments against Holland, still it would be clear, that though Robinson might originally in 1869 have directed it to be applied as a payment on these Holland bonds on which judgments were afterwards rendered, yet he clearly had no right to direct such application, while the case was pending before the commissioner, even if Buster and Beard have never made any application of it.

If these had been the facts, and it is impossible to take a more favorable view to Robinson of what the depositions prove, it would, I think, have been the duty of the commissioner to apply this money to the payment, first, of the balance due on the bonds of Robinson, Dyer and Hull for the purchase of the property and the balance only on the Holland judgments. Perhaps the decree of April 11, 1871, would preclude even his application of this balance to the payment of these Holland judgments, did not the answers of Buster and Beard agree that this balance might be so applied. This is what the commissioner did do in making his report.

The general rule in regard to the appropriation of payments is, that the party, who pays money, has a right to apply the same, as he sees fit; if there be several debts due from him, he can designate that one, to which it shall be applied; if the party making the payment does not make any specific appropriation thereof, then the party, to whom the payment is made, may apply it to any legal claim, which he may have against the debtor; and if neither party make any such application of the payment, then, if there are various debts due to the creditor, the court will make the application according to its own view of the law and equity of the case under all the circumstances. The law in such cases is thus laid down in *Smith* v. *Loyd*, 11 Leigh 512, in the syllabus:

". When one is indebted to another for several debts, and the debtor makes payments, without directing to which of the debts they shall be applied, and the creditor makes no particular application of the payments when received, there is no settled rule that the payments shall be applied either according to the presumed intention of the creditor, or according to the presumed intention of the debtor, or that the payments shall be applied 'in the manner most beneficial to the one or to the other; but it devolves on the court to apply the payments according to the justice of the particular case, with a view to all its circumstances."

The debtor has the first right to make the application; if he does not, the creditor may do so; if neither does, the court will appropriate it according to the justice of the case, having due regard to the rights of other parties, who may be interested. The application by the debtor must be made at the time of payment; but it may be either an express or implied application, and the creditor can not make the application, after suit is brought, and perhaps not after a controversy has arisen between him and the debtor. But to these general rules there are exceptions. See the whole matter discussed in Tudor's Leading Cases Mercantile and Maritime Law, vol. 1, page 1; *Devayner* v. *Noble* (Clayton's case) and the notes thereto of English and American cases.

Applying the law to the present case and assuming, that their was no application of the $2,500.00 paid by sale of the tanyard-property by either of the parties and no estoppel produced by the decree of April 11, 1871, because of Buster and Beard's answer, how ought this $2,500.00 to be applied by the court? There were two debts due from Robinson to Buster and Beard, one of them being the balance due on bonds for the purchase-money of the tanyard-property, which Buster and Beard sold to Robinson on November 11, 1865, signed also by Dyer and Hull both of whom were utterly insolvent. Whether Buster and Beard had a vendor's lien or any other sort of lien upon this property to secure their purchase-money bonds does not appear. The other debt due from Robinson was not properly speaking a debt at all. He had on March 1, 1867, assigned to Buster and Beard for a valuable consideration two bonds of one

John M. Holland which were liens on a tract of land owned by Robinson, when this payment of $2,500.00 was made to Buster and Beard.        He was not personally responsible for these Holland bonds, which had been sued upon and become judgments, unless he was responsible contingently as assignor *of these bonds* for a valuable consideration.        Whether or not he could have been sued by Buster' and Beard successfully as such assignor, the record does not show, but this tract of land of 150 acres, which Robinson owned, when this $2,500.00 was paid, was certainly liable for the Holland debt; and there was subsequently a decree of the court rendered, whereby it could be sold at any time.

This being the nature of the two debts due to Buster and Beard, they on March 1, 1869, bought back this tanyard from Robinson and agreed to pay for it $2,500.00 by crediting that amount on the debts due to them; but, as we assume, there was no appropriation of this $2,500.00 to either of these debts specifically.        Now as this $2,500.00 payment was the proceeds of the sale by Robinson of this tanyard, if the creditors, Buster and Beard, had a vendor's lien on the tanyard to pay these bonds of the purchasers from them, it would be entirely clear, that the money could be only applied to these purchase-money bonds; and till they were fully paid, no part of it could be applied to the payment of the Holland judgments; but even though Buster and Beard had no vendor's lien on the tanyard, yet in equity and justice the proceeds of the re-sale by Robinson to them of the property could be applied to what Robinson still owed Buster and Beard therefor in preference to the application of it to the payment of judgments due Buster and Beard from a stranger, Holland, merely to relieve the farm of 150 acres owned by Robinson from its liability to pay these judgments against Holland.        It seems to me it would be most inequitable to apply the proceeds of the resale of the tanyard not to pay the debts to Buster and Beard incurred in the original purchase of it by Robinson and others but to another debt well secured, simply to relieve the purchaser, Robinson, from a liability to have his farm sold to pay this other debt.        Buster and Beard had as against Robinson an equitable right to ask that the proceeds of the re-sale of the tanyard should be applied to pay what

Robinson still owed on the original purchase thereof in pref-
erence to its application to pay any other debt, for which either
Robinson or his land was bound.

It is true, that as Robinson was the debtor, he could, when
he re-sold this tanyard to Buster and Beard, have agreed with
them, that the purchase-money should be applied to the pay-
ment of these Holland judgments, and he intimated that such
was the agreement, but they positively deny this; and it
seems highly improbable, that there was any such under-
standing.   Assuming that there was not, and that there was
no understanding as to how this $2,500.00 was to be applied,
and that it never was applied specifically to any debt, then,
as equity and justice required it to be applied to the payment
first of the balance due on the bonds given by Robinson and
others for the purchase of the tannery-property, and after
they were paid, then that the balance only should be applied
to the payment of the Holland judgments, the law would
make that application.  .Therefore we conclude, that in any
view, which can be taken of the case, the commissioner did
not err in applying this payment of $2,500.00 in this manner.

The appellant's counsel insist, that the circuit court erred
in not continuing the cause at the April term, 1885, on the
application of Robinson based on his affidavit.   In the case
of *Woods & Bemis* v. *Young,* 4 Cranch 237, the Supreme
Court of the United States held: " The granting or refusing
a continuance is merely a matter of form and discretion, and
that the court above can not look into the merits of the ques-
tion whether the court below ought to have granted a con-
tinuance of the cause."   It has been long settled in this State
and Virginia that " a court in granting or refusing a con-
tinuance of a cause ought to exercise a sound discretion and
if a party be ruled into a trial or hearing of a cause when it
appears that he was entitled to a continuance the judgment or
decree against him will be reversed by an appellate court."
(*Rook* v. *Nancy and others,* 4 Me. 157.)  But though an Appel-
late Court will in this State and Virginia supervise the action
of an inferior court on a motion for a continuance, it will not
reverse a judgment or decree on that ground, unless such
action was plainly erroneous, even if the case were a criminal
case.  (*Hewitt* v. *The Commonwealth,* 17 Gratt. 627.)   Cer-

tainly we can not say, that the court below plainly erred in refusing to continue this cause. The affidavit of Robinson for a continuance gives neither the name of either of his witnesses nor the substance of the testimony of either of them, nor does it show any diligence to obtain their depositions or any sufficient excuse for not having obtained their depositions; and in the absence of all this in a chancery cause, in which the deposition can be taken anywhere or at any time after the filing of the bill, a general statement that witnesses, whose names are not given, are material, and that the plaintiff can not safely go to trial without them, and that affiant has made every effort in his power to find exactly where his witnesses live, so as to take their depositions, and has not been able to do so, without stating particularly what those efforts have been, is entitled to very little consideration, especially when this affidavit and application for a continuance is made either after or but a few days before the cause was submitted to the court for decision, and after the cause had been referred to a commissioner and his report returned, and especially when from the affidavits of the defendants there is reason to believe, that one of these witnesses, to get whose deposition this continuance is asked, was really a co-plaintiff with the party asking the continuance, and if his exact evidence was not known to him, it was simply because he did not choose to enquire, as it was generally known where he lived.

Under these circumstances the court below had a right to regard this application for a continuance as an effort simply to prevent a decree being rendered during that term of the court, this cause being ready for a final decree dismissing the bill or petition of applicant at his costs and the costs of one of these absent witnesses. In a matter of this character the courts must be governed by the facts in each particular case, which constantly vary, and but little aid in reaching a conclusion can be obtained from authorities, especially as they may be modified by the differing practice and statute-laws in different States. But I will refer to *Ilett et al.* v. *Collins et al.*, 102 Ill. 402 and *Moon* v. *Helfer*, 23 Kan. 139, as two recent cases, where the affidavits for continuance resemble the affidavit in this cause, and in which continuances were refused, and the

decisions of the court below in refusing these continuances approved.

It is also relied upon as an error, that the court below sustained the exception to the deposition of John M. Holland. We have seen, that if his deposition had been read, the decree of the court would not have been changed; but the court under the circumstances did not err in sustaining the exception to this deposition. John M. Holland, the witness, was one of the petitioners or plaintiffs in this bill of injunction, and of course his deposition could have been taken at any time. Yet it was not taken, till after the cause had been referred to a commissioner, and the commissioner had reported that he owed $3,411.14 on two judgments, which he alleged in his first petition or bill of injunction with Robinson had been fully paid off and discharged more than sixteen years before. Nor was any notice given to take his deposition, till the cause had been heard and submitted to the court for a final decision; and the day fixed for the taking of this deposition was a day during the term of the court, in which this cause was pending, and in which the counsel for the defendants was a practicing attorney and did not cross-examine him, because, when the time fixed for taking the deposition arrrived, and it was taken, this attorney was actually engaged in the court professionally. It does not appear, what length of time elapsed between the service of this notice and the taking of this deposition, as the appellant has not had this notice and its service copied into the record, as he ought to have done. But the above facts are, it seems to me, ample reasons, why the court ought to have refused to read this deposition, even had there been no objection to the length of time between the service of the notice and the taking of the deposition. After the return of the commissioner's report, as the law was formerly, no deposition could be taken and read, though taken after reasonable notice and before the session of the court (2 Barton's Ch'y Pr. 737); but our statute now in force provides:

"In a suit in equity a deposition may be read if returned before the hearing of the cause, or though after an interlocutory decree, if it be a matter not thereby adjudicated and returned before a final decree."

The statute is and has long been in force in Virginia. It was construed by the court of appeals in Virginia in *Richardson* v. *Dable et als.*, 33 Gratt. 730, and, it seems to me, properly construed. It was held that under it, when there has been an interlocutory decree in a chancery cause, a deposition taken thereafter can not be read *as to any matter thereby adjudicated,* unless it be as the foundation for a motion or petition to re-hear the cause. But as to any matter not adjudicated, if the deposition be taken and returned upon a final hearing, it *may* be read; but the right to have it read is not an absolute right. This statute does not say such deposition shall be read, but only says it *may* be read; and if a cause has been referred to a commissioner, and ample opportunity has been given to both parties to introduce their witnesses, and the commissioner has made his report, and the cause is ready for hearing, a deposition afterwards taken as to a controverted matter in the report ought generally to be disregarded by the court. The court well says, p. 740:

"Any other construction would be a premium for negligence, and would place it in the power of one or the other of the parties in many cases to protract litigation almost indefinitely. Whether the testimony thus delayed will be heard, must in every case depend upon a sound judicial discretion, to be exercised upon the facts of the case, the nature of the evidence, the reasons given for the delay, and a variety of circumstances which must be adjudicated as they arise."

In the cause before us the reading of the deposition of the witness, Holland, would not in my judgment, as I have stated, have changed the decree. If so, the fact that it was not read, did not prejudice the appellant. But if the statements contained in it had been believed by the court, it would have produced a far different decree; and if so, the court would have of course given the other side an opportunity to refute this evidence introduced at so late a time, which would have involved a continuance of the cause, when it was ready for hearing, a re-committal of the commissioners report, a re-opening of the case for the introduction of other testimony on either side, and a prolongation of the controversy. The adoption of such a rule would be a most dangerous precedent. Such action by the court would be unjustifiable except in a

special case, when the refusal, of the court to read a deposition, taken after the return of a commissioner's report to controvert it, would work wrong and injustice, and when satisfactory reasons were given for the great delay in taking the deposition and the postponement thereof, till after the commissoner had reported on the facts, with reference to which the deposition was taken.

In this case no reason is given for this most unreasonable delay to take the deposition of Holland, a party to the suit, where testimony was taken to controvert the report of the commissioner and to show, that two judgments against the witness were fully satisfied, which the commissioner had reported were unsatisfied and $3,411.14 still due upon them. The counsel for the petitioners or plaintiffs in the bill of injunction, of whom Holland was one, had of course the fullest opportunity of ascertaining what he could prove and, we must infer, could, if they had not wished to delay the closing of this controversy, have readily taken his deposition, while the very question, on which he deposes, was before the commissioner for enquiry and decision. We can not say the court erred in refusing to read or consider this deposition of Holland as evidence.

Appellant's counsel also claim, that it was error in the court not to give the judgment-debtor Holland a day, within which he or some one for him might pay off the judgments, which were declared to be liens on the land, before it was advertised and sold by the commissioners. This we have seen was a fatal defect in the decree of April 11, 1871; but as that decree could not be reviewed or reversed the court had no authority to give such day in the decree of June 3, 1885. It could not change the decree of April 11, 1871, in any respect, so far as the change was not necessitated by facts occurring after the rendition of the decree, or was not made in favor of appellants with the consent of Buster and Beard. In those matters, in which a change was necessitated by events occurring after this decision, the court had a right to make the necessary change, for this was neither reviewing nor reversing the decree. It had a right for instance to reduce, as it did by more than $1,000.00, the amount of the judgments declared to be liens on the land ordered to be sold, as

these judgments had been reduced to that extent by payments made since April 11, 1871, and by offsets, which Buster and Beard agreed might be so applied. But it did not allow any payments made on these judgments prior to April 11 1871, nor any offsets except those Buster and Beard assented to. The credits, which the commissioner allowed before that time, were not on these judgments but on the indebtedness of Robinson, Dyer and Hull on the tannery-property. This only incidentally diminished the balance due on the judgments by increasing the credit, which Buster and Beard agreed might go on them, which arose from the re-sale of the tannery-property. Then again in the petition or bill of injunction filed by Robinson and Holland in April, 1885, while they claim, that these two judgments are not liens on this 150 acre tract of land, they do not base this claim on the ground that Holland, against whom these judgments were, did not own this land, when the judgments were rendered, but on the sole ground, that since the rendition of these judgments they had been fully satisfied and discharged.

From the views, which I have above expressed, it will be seen, that by comparing them with the decree of June 30, 1885, this decree is in all respects correct, that it refrained from modifying the decree of April 11, 1871, even where it was erroneous in such matters as it could not change without reviewing and reversing that decree, and except where modified contrary to the interest of Buster and Beard but with their consent as shown by their answer. And the court modified it in all proper respects, where it had the power to do so. It is true the court might have ascertained in this cause the exact portion of the 150 acres of land directed to be sold, which had been previously sold by a decree of the same court in another cause to pay a claim superior to the title of John M. Holland. But as it appears, that this commissioner when enjoined had expressly excepted that portion of the land from the land offered for sale, it is but reasonable to infer, that it was perfectly well defined, and that none of the parties to this cause deemed it necessary to ascertain and define the portion of said tract of land, which had been previously sold, and which was not then to be offered for sale. The court in this decree of June 30, 1885, having

thus modified the decree of April 11, 1871, in all proper respects, properly dissolved the injunction, which it had awarded, and dismissed the petition or bill of injunction at the costs of Robert Robinson. There is nothing in the details of the decree of June 30, 1885, to the prejudice of the appellant.

For these reasons I am of opinion, that it should be affirmed, and that the appellees should recover of the appellants their costs in this Court expended and $30.00 damages.

AFFIRMED.