# CHARLESTON

CENTRAL DISTRICT & PRINTING TELEGRAPH CO.
*vs.*
PARKERSBURG & OHIO VALLEY ELECTRIC RAILWAY CO.

Submitted March 17, 1915.   Decided April 6, 1915.

1. JUDGMENT—*Collateral Attack—Matters Affecting Jurisdiction—Extrinsic Evidence.*

    Declarations by a domestic court of general jurisdiction respecting matters affecting its jurisdiction, can not be overthrown by extrinsic evidence, except for fraud or collusion.   (p. 122).

2. SAME—*Recitals—Conclusiveness.*

    In the absence from the record of anything contradictory thereto, the recitals in a decree that all the defendants had been duly served with process and had failed to appear, are conclusive.   (p. 122).

3. SAME—*Recitals in Decree—Service of Process—Contradiction.*

    A copy of the process found in the record, with no return thereon by the sheriff, but with a memorandum by the clerk stating that there is no return on said process, does not contradict the recitals in a decree as to service of process.   (p. 123).

4. SAME—*Recitals in Decree—Conclusiveness—Service of Process.*

    Where a decree recites that the cause was heard upon the original and amended bills taken for confessed, after due service of process thereon on all the defendants, and the rule docket fails to show service of process upon some of them, the decree is a judicial ascertainment that all were served, and will be considered an informal correction of the rules.   (p. 124).

5. MORTGAGES—*Deed of Trust—Creation of Lien—Issuance of Bonds.*

    Where the trustee in a deed of trust made by a railway company to secure a bond issue, is made party defendant and served with process, it is not error for the commissioner, to whom the cause has been referred, to fail to report such deed of trust as a lien, in the absence of proof showing issue and sale of bonds.   (p. 126).

6.  ACTION—*Abandonment—What Constitutes.*

The pendency of a suit on the court's docket for three years without any order or proceeding taken during that time, does not prove intention to abandon the suit.  (p. 126).

7.  COURTS—*Jurisdiction—State and Federal Courts.*

Where a state court has acquired jurisdiction of the parties by issuance and service of summons, in a suit brought to enforce liens against specific property within its jurisdiction, it can not be ousted of its jurisdiction of the cause by the bringing of a subsequent suit in a federal court by the holder of bonds, secured by trust deed on the same property, for the purpose of enforcing the lien of such trust deed.  (p. 126).

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Tyler County.

Suit by the Central District & Printing Telegraph Company against the Parkersburg & Ohio Valley Electric Railway Company and others.  From the decree, the defendant named appeals.

*Affirmed.*

*V. B. Archer,* and *McCoy & Swiger,* for appellant.

*S. Bruce Hall* and *M. H. Willis,* for appellee.

WILLIAMS, JUDGE:

This suit was brought to enforce the lien of a judgment against the property of the Parkersburg & Ohio Valley Electric Railway Company.  The original bill made the judgment debtor and Jack Hamilton parties defendant and was filed at November rules, 1909.  At January rules, 1910, plaintiff filed an amended bill bringing in two additional parties, to-wit: the Union Trust & Deposit Company, a corporation, and John Schrader.  The cause was later referred to a master commissioner who made a report of the liens.  There were no exceptions to the report, and on the 13th day of·September, 1913, a decree was entered confirming it, fixing the priorities of the liens and decreeing a sale of the property which consisted of a line of electric railway and rights of way, about five miles in length in the county of Tyler, extending from Sistersville to the town of Friendly.  There had been no appearance by any of the defendants.  On the 15th day of

November, 1913, the Parkersburg & Ohio Valley Electric Railway Company appeared before the judge of the circuit court of Tyler county in vacation, as it had a right to do under Sec. 4, Ch. 134 of the Code, and moved the judge to set aside and annul the decree of sale and two other interlocutory decrees entered respectively on June 24, 1910, and June 27, 1913, on the ground, principally, that it had not been served with process either upon the original or the amended bill, and for the additional reason that Henry M. Jackson, the purchaser of a large amount of mortgage bonds which said railway company had issued, had brought a suit against it and others, in May, 1911, in the United States District Court for the Northern District of West Virginia, which suit was pending at the time the decree appealed from was rendered. Plaintiff appeared and resisted the motion. Both parties filed affidavits upon the question of service of process. The judge continued the motion until the 22nd of November, 1913, when he heard arguments of counsel upon it in vacation, and overruled it. The railway company excepted to his ruling.

The first order made in the cause, referring it to a commissioner, was made on the 24th of June, 1910, and contains this recital, viz.: "This cause came on to be heard upon the bill of complaint and the amended and supplemental bill filed therein and exhibits filed therewith; upon the summons returned duly executed on all the defendants. The defendants failing to appear, demurrer or plead the bill is taken·for confessed by all the defendants and submitted to the Court." Commissioner K. S. Boreman, to whom the case was referred, retired from office before making report, and, on the 27th June, 1913, the court made another order referring it to O. C. Carter another commissioner. That order recites that the cause was heard upon the bill and supplemental bill regularly matured at rules, and taken for confessed and set for hearing. The final decree likewise recites that the cause was heard upon the "original bill and amended bill filed in this cause and process duly served thereon upon all of the defendants except Jack Hamilton; upon bills regularly taken for confessed and cause set for hearing;" and upon the order of reference and commissioner's report. The foregoing

recitals are the solemn declarations of a domestic court of general jurisdiction upon a matter pertaining to its jurisdiction, and constitute a part of the record which is generally accepted as a verity. Unless contradicted by some other portion of the record itself, the recitals are final and conclusive on the defendant. For reasons of public policy the law will not permit the record to be overthrown by extrinsic evidence, except for fraud or collusion. 1 Black on Judgments, Sec. 273; *White* v. *White*, 66 W. Va. 82; *Jones* v. *Crim*, 66 W. Va. 301; and *Darnell* v. *Flynn*, 69 W. Va. 146. "A recital in a decree that all the defendants had been duly summoned, is conclusive on appeal in the absence from the record of anything to the contrary." *Moore* v. *Green*, 90 Va. 181. *Ferguson's Adm'r* v. *Teel et al.*, 82 Va. 690; and *Hill* v. *Woodward*, 78 Va. 765.

But counsel for the railway company insist that the record does contain evidence of the fact that process was not served upon it. We do not think so. There is no copy of summons in the record, either upon the original or the amended bill, with return thereon showing service upon the aforesaid railway company; and the only record evidence of service upon it is the recital of the fact in the decrees, and the rules taken by the clerk at the November and the December rules, 1909. The record shows the following memoranda made by the clerk, viz.: "November Rules, 1909. Summons returned executed as to Parkersburg & Ohio Valley Electric Railway Company, bill filed and decree nisi as to it," and, "Dec'r. Rules 1909. Bill taken for confessed and cause set for hearing as to Parkersburg & Ohio Valley Electric Railway Company." These rules were evidently taken on the original bill, because the amended bill was not filed until January rules, 1910. Counsel for appellant insist, however, because a copy of the summons to answer the original bill appears in the record, and shows that it was issued on the 14th of September, 1909, returnable to October rules, and contains no return by the officer, showing whether it was, or was not served; and because no order was made by the clerk, at the October rules to which the summons was returnable; and because there is a note appended to the summons, not made by the clerk who issued it, but by his successor in office, who certified the record

to this court, stating: "There is no return by the sheriff upon said summons," that, therefore, the record itself shows no process upon the original bill was served upon said railway company. But this is a *non sequitur*. Those facts do not necessarily contradict the court's declaration in its solemn decree that it was served and failed to appear. If they can be made to harmonize with the decree, on any rational and consistent theory, they certainly ought not to be taken as contradicting it. It was necessary, of course, for the summons to have been served before October rules, because it was returnable at that time. But the absence of any memorandum, at October rules, proves nothing, except the failure of plaintiff to file its bill then. Rules are designed to hasten the production of an issue between the parties, in the vacation of the court, by requiring the party in fault to declare, plead, rejoin or answer, as the case may be. But no rule can be taken against a defendant, until plaintiff has caused him to be served with process, and has filed his declaration or bill. 4 Min. Inst. 684; and *Waugh* v. *Carter,* 2 Munf. 333. A rule could not have been taken before November rules, because the bill was not filed until then. Hence, the absence of any rule upon the railway company, at October rules, is no evidence that it was not served before that time. The November rules do not show when it was served, and it was not necessary for it to do so. The absence of a copy of summons, containing the officer's return, and the presence of one containing no return, do not disprove service, although the effect of a copy showing insufficient service might be otherwise. *Jones* v. *Crim,* 66 W. Va. 301. The copy of the summons, showing service, may have been lost out of the record. We simply suggest this as a rational and possible explanation of its absence from the record, for it can not be presumed the court found falsely. The presence of a copy of summons, with no return on it, proves no more or less than if no copy appeared in the record at all. Indeed, we fail to see how an unindorsed summons is properly a part of the record.

Plaintiff filed its amended bill at January rules, 1910, for the purpose of making the Union Trust & Deposit Company, a corporation, and John Schrader additional parties, and while the rules taken thereon do not show service on any of

the defendants, except John Shrader, still they are erroneous in this respect, as disclosed by other parts of the record. Process issued on the 8th of October, 1909, to answer the amended bill, one addressed to the sheriff of Wood county, and another to the sheriff of Hancock county. They both appear in the record, the former returned by the sheriff of Wood county, showing service upon the Union Trust & Deposit Company on October 13th, and the latter, showing substituted service on John Schrader, by the sheriff of Hancock county, on the 20th of October. This return was defective, but was later amended, by permission of court. Notwithstanding service upon both these parties thus appears to have been made, the rules for January and February, 1910, mention service upon Shrader only. It does not appear by any other part of the record, except the decrees, whether process, upon the amended bill, was served upon the railway company or not. But the decrees are just as conclusive to show service upon it, of process upon the amended bill, as they are to show service of process upon it, on the original bill. The final decree recites service was had, as to both the original and amended bills, upon all the defendants, except Jack Hamilton. This must be taken as supplying the omission and correcting the error in the rules. The court has such authority by virtue of statute. Sec. 60, Ch. 125, Code 1913; *Riggs* v. *Lockwood*, 12 W. Va. 133; *Baylor* v. *B. & O. R. R. Co.*, 9 W. Va. 270; *Herring* v. *Bender*, 48 W. Va. 498; and *Sou. Express Co.* v. *Jacobs*, 109 Va. 27. Defendant is not prejudiced because the correction was not expressly and formally made. The omission of the clerk to note on his rule docket, service of process on the Union Trust & Deposit Company and Parkersburg & Ohio Valley Electric Railway Company, does not contradict the court's decree finding that they were served. Every reasonable presumption must be indulged in favor of the correctness of the decree. The copy of summons to answer the amended bill, issued on the 30th of December, 1909, returnable to January rules, 1910, and addressed to the sheriff of Wood county, appearing in the record, without any return whatever upon it, proves nothing. The clerk's memorandum, stating there was no return on it, adds nothing to its value, as contradicting the decree. There being

no record evidence showing the court's decree to be erroneous, as to service of process, we are compelled to hold it a verity, and unassailable by extraneous evidence, in the 'absence of any allegation that it was procured by collusion, or fraud upon the court. It is, therefore, unnecessary to consider the affidavits, taken in support of appellant's motion to set aside the final decree, on the ground that it was not served with original process. The decree can not be impeached by extraneous evidence, except for fraud or collusion, and that is not charged.

It was not error to decree plaintiff's judgment to be the first lien upon the railway company's property. True, the trust deeds to secure bond issues were on record at the time plaintiff recovered its judgment, but the trust deeds were not alone sufficient to create liens. There had to be an issue and sale of bonds thereunder; and there was no evidence before the commissioner that any bonds had been issued. Moreover the assignment, if it were error, would not prejudice appellant.

The fact that the suit was pending from June, 1910, until June, 1913, without any order being made or proceeding taken in the cause, does not show abandonment. Abandonment depends upon intention; and failure to proceed in a pending cause for three years does not prove intention to abandon. *Garrett* v. *Oil Co.*, 66 W. Va. 587; *Smith* v. *Root, Id.* 633. Section 12, chapter 114, serial section 4615, Code 1913, continues a cause that is upon the docket of the court, without the entry of an order of continuance. "A failure for fourteen years to make any entry of a cause at all or to make any entry but a continuance is no discontinuance of the cause, if the court has made no order dismissing the cause for want of prosecution, as provided by sec. 8, of ch. 127 of the Code." *Buster* v. *Holland*, 27 W. Va. 510. See also *Thommason* v. *Simmons*, 57 W. Va. 576, and *Gillespie* v. *Bailey*, 12 W. Va. 70.

The suit brought by Henry M. Jackson against appellant and others, in the United States District Court for the Northern District of West Virginia, did not oust the state court of jurisdiction. The suit in the state court had been pending for nearly two years when that suit was brought; and the

rule, in cases of concurrent jurisdiction between the federal and state courts, is that the court first acquiring jurisdiction over the subject matter of the suit and the parties, by issuance and service of process, is entitled to retain control of it until the end of litigation. Speaking on this subject, in *Covell* v. *Heyman*, 111 U. S., at page 182, Mr. Justice Matthews says: "These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physicially into a different territorial sovereignty."

"The rule is well settled, where two suits are pending between the same parties,— the one in the state and the other in the federal court,—the object of both suits being to secure the same relief, where the relief sought is the enforcement of a lien against specific property, to administer trusts, or liquidate insolvent estates; and in all other suits of a similar nature, where in the progress of the litigation the court may be compelled to assume the possession and control of specific personal or real property, the court which first acquires jurisdiction by the issue and service of process must be allowed to proceed with the hearing of the case to final judgment or decree, without interference on the part of the other court wherein the suit is pending." *Hughes* v. *Green*, 84 Fed. Rep., at page 835.

"This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons." *Farmers' Loan &c. Co.* v. *Lake St. Rd. Co.*, 177 U. S., at page 61. The rule, in cases like the present one, is too well settled to admit of any doubt, and no further citation of authorities is necessary. Mr. Jackson brought his suit in the federal court, as a holder of mortgage bonds, to subject the railway company's property to the lien thereof. This suit had already been brought in the state court for the purpose of enforcing plaintiff's judgment lien against the same property in the

hands of the same defendant; and the two suits were, therefore, for the same general purpose, that is, for the enforcement of liens. The Union Trust & Deposit Company, trustee in the two deeds of trust, to secure the railway company's bonds, had been made a party to the suit in the state court, and it was its duty to protect the interest of the *cestui qui trust,* who also had a right to come into the suit in the state court, if he so desired. He could not, by the bringing of an independent suit in the federal court for the enforcement of his lien, oust the state court of jurisdiction.

Finding no error the decree will be affirmed.

*Affirmed.*