## CHARLESTON.

TAYLOR *et al.* v. TAYLOR *et al.*

Submitted May 11, 1915. Decided June 8, 1915.

1. DISMISSAL AND NONSUIT—*Discontinuance—Neglect of Duty by Clerk of Court.*

    When a chancery cause has been matured for hearing and presented to the court for decision, the failure of the clerk to keep it on the court docket until finally disposed of, caused solely by his negligence, will not prejudice the rights of litigants. (p. 472).

2. ACTION—*Dismissal and Nonsuit—Discontinuance—What Constitutes.*

    A cause which has been submitted to the court for final decision, whether it is kept on the court docket or not, is not discontinued by failure to enter any orders of continuance therein for a period of eleven years; nor does such failure prove an abandonment of the cause. (p. 473).

3. CONTINUANCE—*Pending Suit in Equity—What Constitutes.*

    A chancery cause which has been submitted for decision is a pending suit, if no order has been made dismissing it, notwithstanding eleven years have elapsed without the entry therein of orders of any kind. Sec. 12, Ch. 114, Code 1913, operates to continue it from term to term without an order of court. (p. 473).

4. ACTION—*Dismissal and Nonsuit—Discontinuance—Abandonment.*

    The failure of a plaintiff, after submitting his cause for decision, to have any further orders made therein for a period of eleven years

does not prove a discontinuance or abandonment of the suit. (p. 473).

5. EQUITY—*Pleading—Supplementary Answer.*

A supplemental answer setting up matters which have arisen since the issues were made and the cause submitted for decision, not responsive to the bill, is properly rejected. (p. 473).

6. QUIETING TITLE—*Parties—Lessee of Oil and Gas Lease.*

The petition of an oil and gas lessee, showing the lease was made pending a suit to determine the title to the leased premises, by a party to such suit, asking to be made party and to have its rights adjudicated, is properly rejected. (p. 473).

7. TRUSTS—*Resulting Trust—Purchase from Tax Purchaser.*

A person receiving money from the owner of land under promise to redeem it from a tax sale, who, instead of redeeming, takes an assignment of the purchase from the tax purchaser and procures a tax deed to be made to himself, will be treated as a trustee holding the legal title for such owner. The law implies a trust relation between the parties in such case. (p. 476).

8. TAXATION—*Tax Sale—Forfeiture of Owner's Title—Payment of Taxes by Trustees.*

In such case payment of taxes by the trustee prevents a forfeiture of the owner's title. (p. 476).

9. EQUITY—*Scope of Relief—Pleading and Proof.*

If the specific relief prayed for can not be granted, the court may, if there is a prayer for general relief, grant any appropriate relief warranted by the averments in the bill and the proof. (p. 475).

10. TRUSTS—*Establishment—Jurisdiction—Possession of Land.*

Possession of the land by a plaintiff is not essential to jurisdiction in a suit to establish a trust. (p. 475).

11. ABATEMENT AND REVIVAL—*Suit to Establish.*

A suit by the life tenant and remainderman to establish a trust in land, does not abate on the death of the life tenant. (p. 476).

12. VENDOR AND PURCHASER—*Notice of Purchaser—Possession by Tenant.*

Possession by a tenant is sufficient notice to a purchaser of land to put him upon inquiry concerning the tenant's right. (p. 479).

13. TRUSTS—*Trust in Lands—Dealing With Notice—Effect.*

The quality of trust being once stamped upon land, no subsequent dealings therewith, by persons affected with knowledge of the trust, will defeat it. (p. 479).

14. SAME—*Trustee—Payment of Taxes—Right to Reimbursement.*
  A trustee, although denying the trust and claiming in his own
  right, should be reimbursed on account of taxes paid on the trust
  property.  (p. 480).

Appeal from Circuit Court, Roane County.

Suit by Michael Taylor and others against J. E. Taylor and
others.  From decree for plaintiffs, defendants Henry Young
and others appeal.

*Modified, affirmed and remanded.*

*Pendleton, Mathews & Bell,* for appellants.

*Ryan & Boggess, Harper & Baker* and *Hogg & Hogg,* for
appellees.

WILLIAMS, JUDGE:

By this appeal Henry Young and the Louis F. Payne Oil
Company seek reversal of two decrees made by the circuit
court of Roane county on the 30th and 31st days of January,
1914, in a suit brought in the year 1898, by Michael Taylor
and the heirs of Nancy Taylor, deceased, against J. E. Taylor
and others.  The ostensible purpose of the suit is to avoid, as
a cloud on plaintiffs' title to 52 acres of land, a tax deed
made on the 8th of December, 1896, by G. W. Hundley, clerk,
and H. B. Hughes to J. E. Taylor, and also a deed for the
same land made on the 21st of June, 1897, by said J. E.
Taylor to appellant, Henry Young.  In addition to the special
prayer there is a prayer for general relief.

By the first of said decrees the court rejected the supple-
mental answer, tendered by Henry Young, and the petition
tendered by the Louis F. Payne Oil Company; and, by the
second, it decreed that said Young was the holder of the
legal title, as trustee for the heirs of Nancy Taylor, deceased,
and decreed that he convey the land to them, and that they
pay to him $55.90, taxes and interest thereon paid by said
Young on the land for the years 1895, 1896 and 1897.  The
decree rejecting the pleadings made them parts of the record.

The rejection of Henry Young's Supplemental answer and
affidavit tendered in support of it is assigned as error.  Said
answer avers facts which have arisen since the issues were
made on the original pleadings, and depositions were taken by

both plaintiffs and defendant and the cause submitted for decision. It pleads plaintiffs' laches in failing to prosecute their suit diligently as showing their abandonment of it. It also avers a forfeiture of their title to the state for omission of the land from the land books and failure to pay taxes thereon for a period of more than five years, by virtue of Sec. 3, Art. 13 of the State Constitution, because of his possession and payment of taxes for a period of more than ten years.

The last order in the case, prior to the decrees complained of, was made on December 3, 1903. That was an order submitting the case to the court for decision, in vacation, and was made upon agreement of the parties. Four similar orders had been previously made, submitting it to the predecessors in office of the judge to whom it was submitted in December, 1903, all of whom, apparently, either resigned or completed their terms of office without deciding it. The order, made in August, 1903, recites that the cause had been inadvertently omitted from the docket, and reinstated it. Sometime thereafter it was again omitted from the docket, and the court, by order made the 21st of January, 1914, again reinstated it. That order recites that it had been inadvertently left off the docket by the clerk.

Does the long period of time from 1903 to 1914, within which no order of any kind, not even an order of continuance, was made, and the omission of the case from the docket, work a discontinuance, or show plaintiffs' abandonment of their suit? The effect of previous decisions of this court and the court of Virginia, is to say that it does not. It is not contended plaintiffs did not use reasonable diligence, after the issues were made, to take their proof and present their case to the court for decision. It had been presented for decision four times. What more could reasonably be required of a litigant? Assuming, but not deciding, that it was the clerk's duty to keep the case on the court docket, after it had been submitted to the court, and until finally disposed of, plaintiffs can not be held responsible for his omission of official duty. Both the orders reinstating the cause on the docket recite that it had been inadvertently left off by him. There is no intimation in the record that his neglect was caused by, or con-

tributed to, by plaintiffs, and, hence, no reason to attribute to them the negligence of that officer. His neglect of official duty in that regard could not prejudice the rights of the parties to the suit. *O'Brien* v. *Camden,* 3 W. Va. 20, and *Garrett* v. *Mayfield Woolen Mills,* 153 Ala. 602, 44 Sou. 1026.

Nor does the lapse of time and failure to have any orders made showing proceedings taken, prove abandonment by plaintiffs. It would be otherwise at the common law. ' Numerous terms of court having passed and the record showing no order made, or proceeding taken, would create a chasm in the proceedings and work a discontinuance, at the common law, and plaintiffs would have to begin anew. 3 Blk. Com. 296; 6 Enc. Pl. & Pr. 923; and Bouv. Law Dic., title "Discontinuance". But Sec. 12, Ch. 114, Code 1913, modifies the common law, and operates to dispense with the entry of orders of continuance, in causes which are ready for hearing, but have not been determined before the end of the term. The statute continues a cause, which is ready for hearing, from one term until the next, without the entry of an order of continuance by the court, and, hence, prevents the occurrence of a chasm in the proceedings. This court has frequently held that the failure, even for many years, to take any proceedings in a cause does not show a discontinuance or abandonment of it by plaintiff, provided there has been no order made dismissing it, which the court may do by virtue of Sec. 8, Ch. 127, Code 1913, for want of prosecution for four successive years. *Buster* v. *Holland,* 27 W. Va. 510; *Gillespie* v. *Bailey,* 12 W. Va. 70; and *Central District Printing &c. Co.* v. *Parkersburg &c. R. Co.,* 76 W. Va. 120, 85 S. E. 65. Hence the cause was a pending suit at the time the decrees complained of were made, notwithstanding a period of more than ten years had elapsed since the date of the last order. Therefore, defendant's supplemental answer, setting up matters which arose after the case had been submitted for decision, was properly rejected. His rights were determinable by the state of facts that existed when the suit was brought.

Nor was it error to reject the petition of the Louis F. Payne Oil Company. It acquired its lease mediately from defendant Henry Young, during the pendency of the suit and sometime after it had been submitted for decision. The

petition sets up the interest it claimed by virtue of its lease and the discovery of oil and the operation of a well thereunder. It avers that it purchased the lease without notice of the pendency of the suit or knowledge of plaintiffs' claim of title to the land, and further avers that plaintiffs are estopped because of their standing by and seeing it expend large sums of money in developing the property, and asserting no claim thereto, and making no objection to the development. The oil company could not acquire any interest in the land from a party to the suit, during its pendency, which would defeat any decree the court might properly make. It was a *pendente lite* purchaser indirectly from a party to the suit, the subject matter of which was the title to the land on which the lease was executed. It would, therefore, be as much bound by the court's decree as a party to the cause. That it may have acquired its interest without any actual notice of plaintiffs' claim, or of the pendency of the suit, can make no difference. The rule *lis pendens* does not rest upon the principle of notice, but is a rule of public policy founded on necessity. Were it not so, the control of the court over the subject matter of a suit would be uncertain and, in many cases, would be defeated altogether. For a clear and forceful exposition of the doctrine of *lis pendens* we refer the reader to the opinion by Judge Green, in *Newman* v. *Chapman,* 2 Rand. 102-3. See also *French* v. *The Successors of Loyal Co.,* 5 Leigh 627, and *Wilfong* v. *Johnson,* 41 W. Va. 283. The rule sometimes operates harshly, and it may do so in this instance; but we know of no exception to it. However, its application is limited to cases where the interest is acquired in the subject matter of controversy, and mediately, or immediately, from a party to the suit. *French* v. *The Successors &c., supra.* In such case Sec. 13, Ch. 139 of the Code, requiring notice of *lis pendens* to be recorded in certain cases, does not apply. *Pendente lite* purchasers are affected with notice of all the facts which the record of the suit discloses at the date of their purchase. Hence, it was not necessary to admit petitioner to the suit, and the court properly rejected its petition. *Stout* v. *Philippi M. & M. Co.,* 41 W. Va. 339; *Lynch* v. *Andrews,* 25 W. Va. 751. It acquired no greater

right than its assignor had; the rule applies to all persons subsequently dealing with the subject matter of suit.

It may be, however, that plaintiffs are estopped to deny the validity of the lease. This question we can not, and do not, now decide. Therefore, in order to make it clear that the rejection of the petition was not intended as an adjudication upon the merits of the estoppel therein averred, the decree of dismissal should have so stated. The petition presented a case wholly foreign to the cause alleged in the bill, and for that reason it was properly dismissed.

According to the theory on which relief was granted there had been no forfeiture of plaintiffs' title. The decree finds that defendant Henry Young purchased the land from J. E. Taylor with knowledge of the facts, or its equivalent, which constituted J. E. Taylor a trustee for plaintiffs. In such case the tax deed did not constitute an adverse title to theirs, and the payment of taxes on the land by the trustee enured to their benefit and prevented a forfeiture of their title. *Lynch* v. *Andrews,* 25 W. Va. 751. It is insisted by counsel for appellants, that by their allegations and prayer of their bill plaintiffs specifically asked for a cancellation of the deed as a cloud upon their title, and thereby establish a case of conflicting titles, showing the necessity for plaintiffs' keeping the land on the land books in their own name, to prevent a forfeiture. Notwithstanding the bill does pray for such specific relief, it also prays for general relief, and the court could just as appropriately give one kind of relief as the other, provided the facts averred and proven warranted it. *Castle Brook Carbon Black Co.* v. *Ferrell et al.,* decided at the present term; *Hall* v. *Pierce,* 4 W. Va. 107; *Custer* v. *Hall,* 71 W. Va. 119; *Stewart* v. *Tennant,* 52 W. Va. 559; and *Waldron* v. *Harvey,* 54 W. Va. 608.

Plaintiffs do not aver possession, but it appears from a petition in the record, signed by Henry Young by his counsel, praying for an injunction restraining certain of plaintiffs from cutting and removing the timber from the land, that they were in actual possession at that time; the petition so alleges. There is no order filing that petition, or showing that it was acted on by the judge in vacation, and it may be a fugitive paper and no part of the record. But however that

fact may be, it was not material to aver possession, to entitle plaintiffs to the relief granted. The suit can just as consistently be treated as a suit to establish a trust, and get in the legal title, as one to remove cloud, and in the former possession in plaintiffs is not essential to jurisdiction, as it is in the latter. *Custer* v. *Hall*, 71 W. Va. 119, 76 S. E. 183.

The death of Michael Taylor did not abate the suit. He had only a life estate by the curtesy, and no revivor was necessary; no interest in the subject matter of suit passed from him to any one.

In respect to the merits of the case the testimony is conflicting. The land was sold in November, 1895, for delinquent taxes assessed thereon for the year 1894, in the name of Nancy Taylor, the owner of the fee, who died in 1893. H. B. Hughes became the purchaser at the price of $5.64. There does not appear to be any irregularity in the tax sale proceedings. The land is proven to be worth $500 at that time. Michael Taylor, the husband of Nancy Taylor, having a life estate in the land, had a right to redeem. He testified that he was illiterate and did not know how to proceed about redeeming it, and employed the defendant J. E. Taylor, his neighbor, a man experienced in business, to redeem it for him, and placed in his hands $13.00 with which to do it; that this was within the year next succeeding the sale; that after the time of redemption had passed J. E. Taylor told him he had redeemed it; and that he did not know he had not done so but had taken a deed for it to himself from Hughes and the clerk of the county court, until he heard J. E. Taylor had deeded it to Henry Young. J. E. Taylor did not testify, nor did he answer the bill which averred those facts. A number of other witnesses testified to conversations with J. E. Taylor, and conversations between him and others, had in their presence, in which he admitted Michael Taylor had furnished him money with which to redeem the land. Some of them, however, say J. E. Taylor said it required two or three dollars more than he had received, to redeem it. This extra amount was occasioned by the cost of the tax deed which J. E. Taylor took to himself. The amount of taxes for which the land was sold shows that even less than $13.00 was required to redeem. If those facts are true, (and there is ample evidence to prove

them,) they establish a constructive or implied trust in favor of Michael Taylor and the heirs of Nancy Taylor, deceased. It being the duty of the life tenant to pay the taxes, Sec. 54, Ch. 29, Code 1913, and *State* v. *Mathews*, 68 W. Va. 89, payment by him enures to the benefit of the remaindermen. So, likewise, a redemption by him enures to their benefit. The same principle applies here that is applicable in case money is supplied by one person to another, under an agreement that the latter shall purchase land with it and have the title conveyed to the former, and he violates the agreement and takes title himself. In such case an implied or resulting trust arises, and equity treats the holder of the legal title as a trustee for the person supplying the consideration. The *Bank of the U. S.* v. *Carrington et al.*, 7 Leigh 677; *Pumphrey* v. *Brown*, 5 W. Va. 107; *Hamilton & Co.* v. *Steele*, 22 W. Va. 348; and *Seiler* v. *Mohn*, 37 W. Va. 507.

Defendant took the depositions of a number of witnesses who testified concerning statements made by Michael Taylor, which are not consistent with his own testimony, but we think he has sustained the burden of proving the allegations of his bill respecting the alleged agreement with J. E. Taylor for the redemption of the land. He exhibited with his bill a writing dated November 25, 1896, just two days before the expiration of the redemption year, signed by J. E. Taylor alone, in which he agreed to make to Michael Taylor a deed for the land "against 1st of April 1896", (which date as to the year is evidently a mistake, and should be 1897). That writing contains this proviso: "providing he pays fees for making and recording deed and amount of money I am out in buying said land from court." Counsel for appellant Young insist that this writing proves a conditional purchase by Michael Taylor; that the condition as to time was essential and was not complied with; and that, not being complied with, it gave the vendor the right to disregard the contract. They also urge that it informed Michael Taylor that J. E. Taylor had bought the land, instead of redeeming it. But Michael Taylor testified that he could not read, and did not read the paper, and understood from J. E. Taylor that it simply gave him from that time, until the first of the next April, to pay him the balance due for redeeming it. More-

over, the writing does not state the facts as they must neces-
sarily have been at the time.  J. E. Taylor had not bought
the land from the court, and he certainly had not then spent
any money for the deed and its recordation, for it could not
have been lawfully made until the redemption year expired,
which would not be until the 27th of November, two days after
the writing was given, and was not in fact made until the
8th of December, following.  Furthermore, the writing is not
wholly inconsistent with plaintiff's claim of a redemption of
the land from Hughes.  Hughes' assignment, endorsed on the
back of the sheriff's receipt, bears the same date, November
25, 1896, and recites that, in consideration of $15.81, he
"assigns all (his) rights in the within purchase to J. E.
Taylor."  The sheriff's receipt shows that Hughes paid $5.64
for the land, which was the amount of taxes, interest, com-
missions and expenses of publication due at the time of sale.
That amount, plus twelve per cent. interest for a year, mak-
ing a total of $6.32, was all that was required to redeem, and
Michael Taylor had furnished J. E. Taylor $13.00,—more
than twice that amount.  Both Michael Taylor and J. E.
Taylor were present when the assignment by Hughes was
made.  Hughes testified as a witness for defendant, and, when
it is remembered that Michael Taylor was illiterate, that it
required only $6.32 to redeem and that J. E. Taylor then had
$13.00 of his money for the purpose of redemption, Hughes's
statement, that the reason Michael Taylor did not himself
purchase and take an assignment from him was because he
said he did not have enough money to do so, tends strongly
to prove that Michael Taylor was deceived as to the amount
of money necessary to redeem.  But, on this point, appellant's
counsel contend that Michael Taylor was working a scheme
to get complete title in himself, and thus defeat the heirs.
We do not think the evidence supports this theory; nor is it
probable he would seek to defraud his own children.  The law
would not permit him thus to take advantage of his own
neglect of duty to pay the taxes.  Moreover, the theory is not
a reasonable one.  Michael Taylor had already supplied J. E.
Taylor with more than enough money to redeem.  Why then
should he have made such a statement to Hughes, if he was
not deceived as to the amount of money necessary to redeem?

It is not material to know why J. E. Taylor paid Hughes $15.81 for his interest, which was worth, at most, only $6.32. Michael Taylor could have tendered him that amount, and, if he refused to accept it, he could have deposited it with the clerk. But he did not know what his rights were.

The next important inquiry is, did Henry Young, at the time of his purchase from J. E. Taylor, know of his trust relation, or have knowledge of such facts as would put a prudent person on inquiry, which would lead to a disclosure of such relation? We think the evidence abundantly shows that it was his duty to make inquiry of Michael Taylor concerning his claim to the land. In the first place, the deed from J. E. Taylor and wife to him, upon its face, casts suspicion on J. E. Taylor's title. It bears date on the 21st of June, 1897, and contains this recital: "Said land was sold to Henry Young Dec. 28, 1896, provided Michael Taylor did not pay said J. E. Taylor amount of money it cost him which was about $30 against April 1" 1897 and as said Taylor has not redeemed such or nothing paid on the same, said land is conveyed to said Young as per agreement." This called attention to some interest Michael had in the land; yet he never went to see him to inquire concerning his claim, until after he had bought the land. It also shows that Young had conditionally bought the land at a time when his grantor recognized the superior right, for a time at least, of Michael Taylor; thus disclosing eagerness on J. E. Taylor's part to get rid of the land. Michael Taylor's right of redemption from J. E. Taylor is recognized by the paper. It thus disclosed a substantial interest in Michael Taylor, amounting to more than a mere option to buy it. Such right to redeem was not forfeited by failure to pay at the time specified. It also revealed the fact that J. E. Taylor, according to his admission in the recital, recognized that he was holding the title only as security for what he claimed he had advanced in the purchase of the land for Michael Taylor. This of itself was sufficient notice that he had not bought the land for himself, and if he had consulted Michael Taylor the presumption is he would have learned the state of facts disclosed in Michael Taylor's testimony. The insignificant sum paid by Young for the land is a potent circumstance tending to show he had little

faith in J. E. Taylor's title. He paid only $35.00 for it, and
the proof shows it was then worth $500.00. Again, the deed
J. E. Taylor made to Young contains this very unusual and
suspicious clause: "The party of the first part conveys with-
out general warranty just such title as is in them, to the party
of the second part in the certain tract of land hereafter
described." Moreover, in addition to the foregoing matters
appearing in Young's contract of purchase and his deed, there
is an additional fact which, of itself, is generally sufficient to
put a purchaser upon inquiry, which is possession of the land
by Michael Taylor at the time of Young's purchase. He and
one of his daughters were then living on the land. His posses-
sion was notice to a purchaser of his claim; and it was Young's
duty to have inquired of him the nature of his possession,
before making his purchase; and, not having done so, he is
chargeable with all the information such inquiry would have
revealed if diligently pursued. *Campbell* v. *Fetterman's
Heirs*, 20 W. Va. 398, and *Western M. & M. Co.* v. *Peytonia
Cannel Coal Co.*, 8 W. Va. 406, pt. 21, syl. Hence, Young was
affected with notice of his vendor's trust, and took the land
subject thereto. He acquired no better right to the land than
his grantor had. The quality of trust being one stamped upon
the property, no subsequent dealing with it, by persons having
knowledge of the trust, will be allowed to defeat the rights
of the *cestui que trust*. Nothing but the intervention of a
*bona fide* purchaser for value, without notice, can defeat the
trust. Equity will follow the trust subject, as long as it can
be identified, and will impress it with the original trust, un-
less a *bona fide* purchaser without notice has intervened.
*Heiskell* v. *Powell*, 23 W. Va. 717; *Marshall's Ex'rs.* v. *Hall*,
42 W. Va. 641; *Webb* v. *Bailey*, 41 W. Va. 463; and *Hogg* v.
*McGuffin*, 67 W. Va. 456.

The taxes for all the years, since the year 1897,, presumably
have been paid by Henry Young, but the final decree does not
provide for his reimbursement. True, it recites that plaintiffs
offered to pay him any further sums of money that the court
might direct they should pay, and shows he declined to receive
it. He doubtless did so on the ground that his acceptance
might prejudice his right, and hence the decree should have
ascertained the amount of taxes paid, and conditioned the

making of the deed to plaintiffs on their payment, with interest, to the general receiver. The payment of taxes by Young enured to plaintiffs' benefit, and saved their title from forfeiture; and it is only equitable and right that he should be repaid. Plaintiffs are asking relief in a court of equity, and it is a familiar maxim of the law that, he who asks equity should do equity.

The decree of January 30, 1914, should have provided that the rejection of the Louis F. Payne Oil Company's petition was without prejudice to any right it may have to defend its lease on the ground of estoppel. The two decrees appealed from will be modified in the respects above indicated, and affirmed as thus modified; and the cause will be remanded for ascertainment of the amount of taxes and interest thereon due Henry Young. Appellees, having substantially prevailed here, are entitled to their costs against appellants.

*Modified, affirmed and remanded.*