EDWARD H. OATES *v*. RUTH OATES

(No. 9622)

Submitted January 30, 1945. Decided February 27, 1945.

470

*R. A. Welch,* for appellant.
*Ralph J. Bean* and *Ernest A. See,* for appellee.

LOVINS, PRESIDENT:

Ruth Oates complains of a decree made and entered by the Circuit Court of Mineral County, in a suit in which her husband, Edward H. Oates, is plaintiff, and she is defendant, and the litigants will be hereinafter so designated.

Plaintiff and defendant were married January 4, 1936,

at which time he was approximately seventy-eight years of age and she thirty-three. The marriage was never consummated. Prior to the marriage plaintiff, a bachelor, lived alone on a farm near Keyser in Mineral County, and the defendant was engaged in teaching school on a part-time basis.

There is a sharp conflict in the evidence as to whether plaintiff or defendant proposed the marriage. It is sufficient to say that plaintiff was lonely and desired the companionship of a woman, and defendant was in need of money to pay her debts and to assist ailing relatives in procuring medical treatment and hospitalization.

Admittedly the marriage was one of convenience. The plaintiff desired someone to care for him and defendant's primary interest was the property she expected to receive on entering into the marriage. There was an arrangement or oral antenuptial agreement between plaintiff and defendant that the latter should care for the former and should receive all of his property in consideration of the marriage and the future care she bestowed on him.

Plaintiff owned personal property consisting of bonds issued by the United States of America, a deposit in a closed bank, all of which aggregated $6,671.75, and in addition owned a farm of 336 acres, on which he resided, and on which a number of cottages for rental were located. All of the bonds were delivered to defendant shortly after the marriage, but later a thousand dollar bond was returned to plaintiff who pledged it as collateral security for a loan. On the day of the marriage, an automobile was purchased for defendant with money belonging to plaintiff, and the residue of his money was deposited in a bank to their joint credit. After the marriage plaintiff made a will by which he devised and bequeathed all of his property to defendant, and, in the event she died before him, it was provided that the property should go to defendant's two sisters and a brother.

At the time of the marriage the residence on plaintiff's farm was in bad repair, without modern conveniences, and the furniture then in use by plaintiff left much to be de-

sired. Defendant used funds derived by gift from her husband to repair the residence, install electrical lighting, cooking, heating and water facilities, and furnished the home with sufficient furniture.

The relations of plaintiff and defendant were satisfactory until the return of defendant from a ten-day trip to Florida, which she took in the autumn of 1938, after the death of her sister. Defendant on her return was told that plaintiff had executed another will by which he devised his land to a nephew. She thereupon caused a deed to be prepared by which plaintiff's farm would be conveyed to her in fee simple, and which he refused to execute. The plaintiff, however, by deed dated and acknowledged on December 27, 1938, conveyed his farm to defendant but reserved to himself a life estate therein. The pertinent portions of the deed read as follows:

> "* * * That for and in consideration of the sum of $10.00, cash in hand paid, the receipt of which is hereby acknowledged and for the further consideration that the said party of the second part shall attend to and provide a home for the party of the first part, at the home place known as 'Oats Farm' located on Patterson's Creek, Mineral County, West Virginia, the said party of the first part, reserving unto himself a life estate in and to the real estate hereby conveyed, doth hereby grant, bargain, sell and convey unto the party of the second part, * * * TO HAVE AND TO HOLD the above described real estate * * * subject however to the life estate of the said Edward H. Oats * * *."

Plaintiff now seeks a rescission of the conveyance and prays that his deed of December 27, 1938, be set aside on the ground that defendant has not complied with the provision requiring her to "attend to and provide a home for" him.

Plaintiff and defendant rely on many incidents and conditions which, if true, disclose a singular lack of regard for the comfort, peace of mind, and well-being of each other. Plaintiff testified that defendant struck him on several occasions; that she frequently applied to him improper and

vulgar names; that she sold hay produced on the farm without his knowledge; that she had secretly attempted to sell valuable timber standing on plaintiff's land; that she had interfered with tenants of the cottages rented by plaintiff, and in two instances had evicted tenants; that she was extravagant; that she drank to excess and had left the home and stayed for long periods. Defendant charges that plaintiff was filthy in his habits; that he engaged in loathsome conduct in her presence and in the presence of invited guests; that he accused her of prostitution; that he threatened to poison her; that he had adulterated gasoline used by defendant in her automobile; that he refused to pay for electric current consumed at the residence so that further service was denied and she was thereby prevented from using the electrical apparatus and facilities in the home; and that he refused to provide food except the kind he desired.

Defendant admits that on two occasions she struck plaintiff, the first being when he applied to her a vulgar name, and the second being on an occasion when he interfered with some of the tenants in the cottages. She justifies her action by saying that she was angered by the name he called her on the first occasion, and on the second that she did not hurt him, although the evidence shows that she beat his face, head and arms with a broom. With the exception just noted, the parties each deny the accusations of the other. Defendant prays for affirmative relief in that part of her answer in the nature of a cross bill, averring that the antenuptial agreement should be specifically enforced and that she be decreed to be the owner of the farm in fee simple.

The greater part of the evidence was taken in the form of depositions before a notary public, and some was heard by a commissioner in chancery and the trial chancellor. Upon the submission of the cause, the trial court entered a decree by which the deed from plaintiff to defendant was set aside, and defendant perpetually enjoined from interfering with the use and occupancy of the land owned by plaintiff. In the same decree defendant was given leave to

file an amended answer, which set up a claim for improvements placed on the farm and paid for out of her own funds, and the court, over the objection of plaintiff, referred the cause to a commissioner to ascertain the facts with reference thereto.

The defendant appealed from the decree above mentioned, and now contends that she has been and is now ready and willing to perform all of the duties set forth in the deed of conveyance of December 27, 1938, but that plaintiff has prevented such performance by his own misconduct which precludes the relief prayed for by him.

The following questions fairly arise on the record herein: (1) What is the effect and present status of the antenuptial agreement; (2) Is the promise of the defendant, implied by her acceptance of the deed a valid consideration; (3) Is the money consideration alone sufficient to sustain the validity of the conveyance; and (4) Should equitable relief be granted to either litigant.

The oral antenuptial agreement was made in consideration of the marriage and is therefore within the statute of frauds. Code, 55-1-1. *Garrett* v. *Andis,* 159 Va. 150, 165 S. E. 657; *Lloyd* v. *Fulton,* 91 U. S. 479, 23 L. Ed. 363; Annotation 10 A. L. R. 321, *et seq.;* Schouler on Marriage, Divorce, Separation and Domestic Relations, 6th Ed., Section 499. But the agreement is not rendered void by the statute which bars its enforcement, the remedy only being affected. *Gibson* v. *Stalnaker,* 87 W. Va. 710, 716, 106 S. E. 243; *Jones* v. *Shipley,* 122 W. Va. 65, 70, 7 S. E. 2d 346. Moreover, the plaintiff has substantially carried out this unenforceable agreement by delivering the major portion of his personal property to defendant, and by conveying his real estate to her in remainder. We hold that the antenuptial agreement cannot be specifically enforced as prayed by defendant, and that such agreement has no effect on the questions here presented.

The stated considerations·in the deed are twofold: the payment of ten dollars, receipt of which is acknowledged, and the promise of the grantee to "attend to and provide a home" for grantor, her husband. Postponing for the

moment a discussion of the monetary consideration, we are impressed with the unusual nature of the promise of the defendant, on which plaintiff predicates his entire case. The words in which the promise is written are general, indefinite and ambiguous. If it was intended thereby that the wife should furnish shelter, food and other necessities of life to her husband, such intention is opposed to well-settled principles long established in this jurisdiction. It is a duty imposed by law that a husband support his wife. *Anderson* v. *Davis & Oulds*, 55 W. Va. 429, 47 S. E. 157; *Clifton* v. *Clifton*, 83 W. Va. 149, 98 S. E. 72. Plaintiff could not by contract relieve himself of the duty to support himself and his family, and cast such burden upon his wife. *Corcoran* v. *Corcoran*, 119 Ind. 138, 21 N.E. 468, 12 Am. St. Rep. 390; see Code, 48-3-24. If the plaintiff and defendant intended that the latter should support and maintain the former, such intention cannot be given effect.

Viewing the promise of the defendant in another aspect, it is clear that the words used in the deed imported an undertaking on the part of the defendant to perform the usual domestic duties incumbent upon a wife, which arise from the marital relation and cannot originate in any supposed duty imposed by recitals in the deed of conveyance. In the absence of statutory authority, an agreement between husband and wife by which the wife agrees to perform the domestic duties imposed by the marital relation for a consideration is contrary to public policy and void. *Miller* v. *Miller*, 78 Iowa 177, 35 N. W. 464, 16 Am. St. Rep. 431; *Foxworthy* v. *Adams*, 136 Ky. 403, 124 S. W. 381; *Sinift* v. *Sinift* (Iowa), 284 N. W. 91; *Brooks* v. *Brooks*, 48 Cal. App. (2d) 347, 119 P. 2d 970; *Frame* v. *Frame*, 120 Tex. 61, 36 S. W. 2d 152; see Annotation 73 A. L. R. 1518. The marital duties of husband and wife cannot be made the subject of barter and trade, and either spouse performing such duties for compensation, either received or expected, is placed in the category of a servant. True, there are instances where the wife performs special services not of a domestic nature but in furtherance of the business of her husband, for which she may be entitled to compen-

sation. After the marriage, it was incumbent upon defendant to perform the usual, ordinary tasks of the household, and to attend and nurse her aged husband in the event his physical condition required such attention. It follows that the implied promise on the part of the defendant given as a "further consideration" for the conveyance to her of the plaintiff's land is invalid.

What we have said heretofore eliminates the promise of the defendant as a consideration for the conveyance to her, and as the deed now stands the pecuniary consideration only remains. In many instances, the consideration expressed in a deed of conveyance is treated as a formal matter, except where there is an attempt to invalidate it. Here consideration is the gravamen of the suit. Plaintiff recites in his deed the receipt of ten dollars as a consideration for his conveyance to the defendant. This recital, although open to explanation and contradiction, is *prima facie* evidence of the payment thereof. *Bulick* v. *Milkint,* 90 W. Va. 509, 111 S. E. 310. There have been many expressions in judicial opinions with reference to valuable, sufficient and adequate considerations for the conveyance of land. It has been stated that one dollar constitutes a valuable consideration for a conveyance. *Harvey* v. *Alexander,* 1 Rand. 219; *Lovett* v. *Eastern Oil Co.,* 68 W. Va. 667, 70 S. E. 707. We know of no rule which permits invalidation of a conveyance on the sole ground of inadequacy of consideration where made by a person *sui juris* and where no rights of creditors are involved, and no undue influence, duress, fraud, or other vitiating circumstance is shown. See *Jarrett* v. *Jarrett,* 11 W. Va. 584; *Deem* v. *Phillips, et al.,* 5 W. Va. 168. The facts developed in this suit do not bring it within any exception to the general rule stated above.

It may be true that plaintiff was under the impression that the deed provided for a consideration in addition to the ten dollars, but as hereinabove indicated defendant's promise, if performed, amounted to nothing more than doing her duty as a wife. The plaintiff made a mistake of law and this is an effort on his part to be relieved from

the effect of such mistake. Furthermore, it will be observed that the plaintiff by appropriate reservation assured to himself the use of his farm during the remainder of his life. In the circumstances of this case, the financial consideration is sufficient to sustain the validity of the conveyance.

Plaintiff denies all misconduct alleged against him by his wife, and she denies her own misconduct, with the exceptions hereinabove noted, but evidence corroborating the testimony of both is too strong to be ignored. It would serve no useful purpose to state additional details of these accusations. We are impressed with the over-all situation shown by the evidence, which depicts an old man, whose habits are irritating to his younger wife, imputing to her immoral conduct, and who objects to her association with her female friends. Certainly domestic problems of the gravest nature were created by this situation. On the other hand we have a woman whose entry into matrimony was motivated by mercenary considerations, and whose conduct since she obtained the deed is neither to be admired, nor condoned. Bearing in mind that the litigants still sustain the relation of husband and wife with mutual obligations and duties imposed by law, as well as those dictated by a decent regard for propriety, we are of the opinion that both are at fault, and that their misconduct is such that a court of equity should not assist one wrongdoer against another. Therefore, we hold that the conduct of the plaintiff and defendant has been such that neither is entitled to relief in a court of equity. *Thompson* v. *Hall,* 104 W. Va. 76, 138 S. E. 579; *Gas Co.* v. *Nicholson,* 87 W. Va. 540, 105 S. E. 784; *Bates* v. *Swiger,* 40 W. Va. 420, 21 S. E. 874.

Plaintiff cross assigns six errors, which we have considered, but do not find that any of the rulings set forth in the plaintiff's cross assignments sufficient to sustain the decree of the trial court.

Perceiving no basis on which plaintiff could invalidate his conveyance to the defendant, we reverse the decree of

the Circuit Court of Mineral County and enter a decree here dismissing this suit, with costs to the defendant.

*Reversed and dismissed.*

KENNA, JUDGE, dissenting:

It is to be borne in mind that the decree below was for the complainant and that if, upon any reasonable theory, the allegations of the bill of complaint and the proof combined consistently make out a case for equitable relief, the decree is to be sustained as being in response to the bill's prayer for general relief. *Grant* v. *Swank,* 74 W. Va. 93, 81 S. E. 967, L. R. A. 1915B, 881, Ann. Cas. 1917C, 286; *Davis* v. *Lilly,* 96 W. Va. 144, 122 S. E. 444.

Without going into the detail of an overloaded transcript that the Court's opinion covers fully, it can be said that the marriage was entirely a marriage of convenience, Oates being a bachelor in his late seventies living alone on a farm where he had been for a number of years and impregnated with the habits, decidedly unattractive, that were to be expected under the circumstances; she being a schoolteacher in early middle life confronted with financial necessity which in her surroundings could be met only by a profitable marriage. The record does not indicate that another bridegroom was available, so she and Oates bargained.

Oates delivered to her the bulk of the money that he had and conveyed to her a vested remainder in the farm for a recited consideration of her agreement to provide him a home and ten dollars cash in hand. Keeping house for Oates was far from a pleasant undertaking, due to the fact that every normal taste his wife had, ran counter to his lack. However, there was no after-disclosure concerning this and both she and he knew it before entering into their agreement. Oates admitted that their marriage was divorced from sentimentality, and that by it they expected to supply only their material needs; he, care, and she, money.

Of course it is against public policy in any way to disturb the legal responsibilities resulting from and growing out

of marriage. Consequently, that part of the consideration shown on the face of the deed was of no value because void.

Of course I realize that the courts do not measure nor attempt to balance the sufficiency of consideration intended to sustain deeds in the absence of fraud or other equitable reasons justifying the suspension of the general principle. In this case I think that the gross inadequacy of any consideration that could have passed under the circumstances justifies that suspension. Certainly the parties to the deed both realized the difficulty of the undertaking attempted to be assumed by the grantee. They should have been, and doubtless were, anticipated by her. According to the allegations of the bill, and, I believe, the proof, no attempt to satisfy the consideration was made, and had it been it would not have registered from a legal standpoint. The actual consideration that the parties to the deed both intended evaporated completely, leaving nothing but the formal and nominal consideration of ten dollars cash in hand paid. According to the showing in this record, the value of the farm was six thousand dollars and Oates' expectancy of life then was five years, so that the grantee could expect, under the terms of the deed, to acquire the fee in the Oates' farm and home after about five years of extremely disagreeable work. To my mind it is perfectly clear that this agreement was the sole object that both had, it being the only substantial consideration behind their deed. The presumption that the ten dollars actually passed I believe does nothing more than to establish a grossly inadequate value received as compared with the value intended to pass as a consideration. This to my mind, under otherwise normal conditions, is the test. I therefore think that the deed should be set aside because the consideration delivered compared with that intended was plainly grossly inadequate.

It is said that Oates could not be granted equitable relief because to do so is to permit a recovery for the violation of a contract plainly against public policy. For that reason the parties are generally considered to be in *pari*

*delicto* and equity grants no relief. However, there are exceptions to this general rule, one of the most outstanding of which is that where the surroundings or conditions, including the faculties of the parties, are plainly unequal so that fraud, coercion or undue persuasion is apparent on one hand, coupled with a plainly over-emphasized self-interest on the other, accompanied by plainly superior faculties, although the parties are both guilty they are not equally so, hence the maxim does not apply. Remembering that the decree below is to be sustained under the proof upon any reasonable theory, the contrary of which does not appear, I believe that Oates and his wife are not in equal guilt in this matter. He was seventy-eight years old and had lived alone for many years with no contacts which would keep his mind balanced with those of his remote neighbors. She was a woman of thirty-six, a school-teacher of considerable experience, who, compared with him, had seen much of the world. On the witness stand she stated that of the two she was by far the more intelligent. Certainly her schooling far outstripped his. Their surroundings, capacities and advantages being so obviously unequal in my opinion, though in *delicto*, they were not in *pari*. See *Porters Ex'rs.* v. *Daniels*, 11 W. Va. 250; *Daniels* v. *Tearney*, 102 U. S. 415, 420, 26 L. Ed. 187; and 12 Am. Jur. 734. Under our West Virginia cases even the parties to a usurious contract which is contrary to public policy are not considered to be in *pari delicto* even in the absence of a showing of their inequality. See *Harper* v. *Building Association*, 55 W. Va. 149, 46 S. E. 817, and *Ice* v. *Barlow*, 85 W. Va. 490, 102 S. E. 127.

The bill of complaint, however, seems to seek specific relief for either the absence of consideration or the total failure of consideration, and perhaps neither is here shown. However, the bill's allegations of fact are very full in detail, as is the testimony, and under the decided weight of authority, including West Virginia cases, even where the proof does not sustain a finding justifying the granting of the specific relief sought, if it will sustain a finding in conformity with the bill's alleged facts and not inconsistent

with the prayer for specific relief, a decree for complainant should be affirmed as responsive to the prayer for general relief. *Taylor* v. *Taylor,* 76 W. Va. 469, 475, 85 S. E. 652; *Bemis Bros. Bag Co.* v. *U. S.,* 289 U. S. 28, 77 Law Ed. 1011.

For the foregoing reasons, I dissent.